JOSEPH WATT FUGATE *v.* STATE OF MISSISSIPPI.

CRIMINAL LAW. *Writ of error coram nobis. Bias of jurors.*

Where a proper case is made for a writ of error *coram nobis* it will lie in either a criminal or civil case, there being no statute to forbid; but the writ cannot be invoked in a criminal case for the purpose of annulling a final judgment of conviction by showing that one or more of the jurors were prejudiced against defendant and corruptly qualified for the purpose of convicting him.

FROM the judge of the circuit court of Prentiss county.

HON. EUGENE O. SYKES, Judge.

Fugate, the appellant, was indicted, tried, and convicted of murder. His case is twice reported—*Fugate* v. *State,* 82 Miss., 189; *Fugate* v. *State,* ante p. 86. The judge of the court below, after appellant's second conviction, denied his petition for a writ of error *coram nobis,* and he appealed to the supreme court.

After the circuit court had adjourned, defendant presented his petition in vacation to the judge of the court who presided at the trial for a writ of error *coram nobis,* seeking to have the proceeding stayed until the determination of the petition for writ of error *coram nobis.* The petition alleges that three of the jurors had formed and expressed an opinion as to the guilt of petitioner prior to their having been accepted as jurors, and that this was unknown to petitioner or his counsel until after court adjourned; that one juror, Linglebeek, before he had been

accepted as a juror, said in the presence of witnesses "that, if the facts of the case were as he heard them, and he had heard them mighty straight, Joe Watt Fugate ought to be hung without trial;" that Linglebeek stated on his *voir dire* that he had not formed or expressed an opinion as to the case; that another juror (Perry Majors) said before the trial "that Joe Watt Fugate ought to be hung, and he believed he would hang, and that he (Majors) could cut the rope;" that Majors on another occasion said that Joe Watt Fugate ought to hang, and he believed he would hang; that another juror (Luther Garner) had expressed an opinion as to the guilt of Fugate; that, while petitioner could not give the exact words used by Garner, yet said expressions were extremely unfavorable to petitioner, and conveyed the impression that Garner was convinced of the guilt of petitioner. Affidavits were filed with the petition sustaining the allegations as to what these jurors had stated. The petition avers that neither appellant nor either of his attorneys knew that said jurors had expressed said opinions until after the adjournment of court, and that they had exercised all due diligence to ascertain the character of the jurors, and could not, after due diligence, discover these facts.

*Boone & Curlee,* for appellant.

The court below in this case evidently denied the writ upon the ground that such a remedy does not apply in a criminal case, as the showing made in the petition, if true, would entitle appellant to a new trial. This kind of proceeding is unusual in our state. In the case of *Holt* v. *State,* 78 Miss., 631, it was resorted to, but the writ was denied in that case by the circuit judge and affirmed by this court, for the reason that the petition itself made no showing whatever that would justify any court in granting a new trial.

The court, in deciding the Holt case upon writ of error *coram nobis,* expressly declined to pass upon the question as to whether or not such a writ can be invoked in criminal cases, and

also declined to decide whether such a writ, if allowed at all, may be reviewed by the supreme court upon the action of the circuit judge in vacation refusing it, and contented itself with the declaration that the judge's action in refusing the writ was certainly correct, as no court would ever grant a new trial on the showing made by the petition in that case. This case, however, makes what we contend is a full and complete showing, which, if presented upon a motion for a new trial, would necessarily result in the court granting a new trial. Upon passing upon this petition by this court upon the order refusing the same, the facts set forth are admitted, and if we admit that these three jurors expressed the opinions placed in their mouths by the affidavits in this record, then no court would refuse to grant a new trial on such a showing. Three affidavits are presented as to one juror, in which they say said juror used as strong language as to the guilt of the defendant as could possibly be used, stating that he ought to be hanged, and he would be willing to help hang him. Equally as strong statement was made as to the other juror, as sworn to in the affidavits by two parties.

The writ has often been recognized by this court, and our court in the case of *James* v. *Williams*, 44 Miss., 47, uses this language: "There is no reference to a writ of error *coram nobis* in the code, but it is a common-law right. The judgment as in this case may be recalled and the case reversed, either by this writ or by motion." While it has been invoked generally in civil matters, it is applicable to both civil and criminal actions. 5 Ency. Pl. & Pr., 32.

*W. M. Cox,* and *William Williams,* attorney-general, for appellee.

The writ of error *coram nobis* is obsolete in Mississippi. It has not been allowed in any case since *James* v. *Williams,* 44 Miss., 47.

While an ancient writ of the common law, it seems to have fallen into disuse everywhere. "The writ of error *coram nobis*

is now superseded by motion, and is falling into disuse." Free-
man on Judgments, sec. 93. "The writ of error *coram nobis*
has never been used in this state, and is falling into disuse in
England. Its place is supplied by motion in the court where
and during the time when the error occurred. It is an obsolete
writ." *McKindley* v. *Bush,* 43 Ill., 488.

"In general and in the practice of most of the states, this
remedy is nearly exploded, or at least superseded by that of
amendment on motion." *Pickett* v. *Ledgerwood,* 7 Pet. (U.
S.), 144.

If superseded by motion, it would seem that it was never em-
ployed except in cases where motion during the term would
have been sufficient. The writ of error *coram nobis* has never,
so far as can be discovered after diligent search through the
entire history of English and American jurisprudence, been em-
ployed to impeach the integrity of the trial jury. Appellant's
attorneys, with all their well-known learning and diligence, have
not been able to present such a case.

Argued orally by *J. M. Boone,* for appellant, and by *W. M.
Cox,* and *William Williams,* attorney-general, for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

The petitioner was tried and convicted of murder, and sen-
tenced to be hanged, at the February term, 1904, of the circuit
court of Prentiss county. From that conviction he prayed and
obtained an appeal to this court, which is this day disposed of.
After the adjournment of the court, he, in vacation, on the 21st
day of September, 1904, presented to the circuit judge of that
judicial district this petition for writ of error *coram nobis,* in
which, in brief, he seeks to have the judgment of the said cir-
cuit court condemning him to death arrested, and all proceed-
ings stayed, until the determination of his petition for this writ
of error *coram nobis.* The grounds upon which he prays for this
writ are that three of the jurors (Theodore Linglebeek, Perry

Majors, and Luther Garner) who tried defendant had formed and expressed, each, an opinion against the petitioner, although each had denied upon his *voir dire* that he had formed or expressed any opinion. (The reporter will set out the particular averments as to what each of these jurors has, as alleged, said.) It is to be specially noted just here that the ninth ground of the motion for a new trial assailed juror Linglebeek for the same reason—to wit, that he had formed and expressed an opinion; and the tenth ground so assails the juror Luther Garner. It is said, however, by counsel for appellant, that the particular facts on which he was proceeding for a motion for a new trial as to these two jurors were different from those on which he was proceeding as to these same jurors in this proceeding; but it is clear, at all events, that the subject of their disqualification because of the formation and expression of opinions was presented to the circuit court in the motion for a new trial, but no evidence was introduced touching the same, and it was abandoned, so that Perry Majors is clearly the only juror of these three of whom no complaint was made on this score in the circuit court trial.

There is some confusion apparent in the books as to the appropriate office of a writ of error *coram vobis* and of the writ of error *coram nobis*. We quote, as the most accurate statement we have seen on this subject, the language of the court in the case of *Teller* v. *Wetherell,* 6 Mich., 49-51: "When the object of the writ is to remove a judgment from an inferior into a superior court for review and the correction of errors of law or fact, it is called a 'writ of error' only—nothing more. But when the object of the writ is to correct an error of fact in the same court that rendered the judgment, it is called a writ of 'error *coram nobis*' if it be in the king's bench, and a 'writ of error *coram vobis*' if it be in the common pleas. A writ of error is an original writ, and in England issues out of the court of chancery, and runs in the name of the king. With us, it issues from this court, and, under our present judicial organization, can issue from no other. It is 'in the nature as well of a *certio-*

*rari* to remove a record from an inferior into a superior court as of a commission to the judges of the superior court to examine the record, and to affirm or reverse it according to law.' 2 Saund., 101a. The writs *coram nobis* and *coram vobis* differ from a writ of error in two particulars: (1) They contain no *certiorari* clause, for there is no record to be certified; (2) they have no return-day, as they are in the nature of a commission only to the court to correct error. They lie for errors of fact, and for errors in the process, or through the default of the clerks. 1 Arch. Prac., 234. They do not lie when the error is in the judgment of the court itself, and not in the process. 1 Arch. Prac., 235. The writ is called a 'writ of error *coram nobis*' in the king's bench, because the record and proceedings are stated in the writ to remain 'before us' (*'coram nobis'*)—that is, in the court of king's bench. 1 Arch. Prac., 234; 2 Saund., 101a. The king, by a fiction of law, is supposed to preside in person in that court. In the common pleas, where the king is not supposed to preside, it is called a 'writ of error *coram vobis*,' because the record and proceedings are stated in the writ to remain 'before you' (*'coram vobis'*)—that is, the king's justices. 2 Tidd. Prac., 1056a, note 'y.' See 'A Writ of Error *Coram Vobis* in the Common Pleas,' in Arc. Forms, 243; 2 Dunlap's Prac., 1125. . . . The judgment for plaintiff for an error of fact on a writ *coram nobis* or *coram vobis* is that the judgment be revoked; on a writ of error, that it be reversed. *Camp v. Bennett,* 16 Wend., 48."

It is to be observed, as said in *United States* v. *Plumer,* 3 Cliff., 58 (Fed. Cas., No. 16,056), that, apart from the fact that these formal differences designated the particular court in which the judgment was rendered and to which the writ was returnable, they were never of any particular importance, as the office of the writ of error was the same in both courts.

It is perfectly clear, we think, on the authorities, that the writ is applicable to criminal as well as civil proceedings. Says Elliott, J., in *Sanders* v. *State,* 85 Ind., 324 (44 Am. St. Rep.,

29) : "This was a very common remedy in civil actions, but was seldom resorted to in criminal cases. Although rarely used in criminal cases, we find it conceded by courts and writers to be an appropriate remedy in criminal prosecutions as well as in civil actions." To the same effect, see *U. S.* v. *Plumer,* 3 Cliff., bottom of page 59 (Fed. Cas., No. 16,056); *State* v. *Calhoun,* 50 Kan., 523 (32 Pac., 38; 18 L. R. A., 838; 34 Am. St. Rep., 141); 5 Ency. Pl. & Pr., 32, par. 7. Indeed, it is obvious from the very nature and office of the writ that it applies as well to criminal as civil proceedings, in a proper case. For the "office of the writ is to bring the attention of the court to, and obtain relief from, errors of fact, such as the death of either party pending the suit and before judgment therein; or infancy, where the party was not properly represented by guardian; or coverture, where the common-law disability still exists; or a valid defense existing in the facts of the case, but which, without negligence on the part of the defendant, was not made, either through duress or fraud or excusable mistake." Ency. Pl. & Pr., vol. 5, par. 2. It is true, doubtless, as said by Elliott, J., that the writ "is seldom used in criminal proceedings;" but this results from the necessary differences between the steps usually taken and the mode of procedure in a civil and a criminal trial—in other words, from the inherent differences in the two modes of procedure. Wherever, in any procedure, civil or criminal, a proper case is made for the issuance of the writ, it still exists as at common law, and may still, therefore, be used, unless a statute forbids. Ency. Pl. & Pr., vol. 5, p. 30. Our own court has so said in *James* v. *Williams,* 44 Miss., 47. As well said by Cowan, J., in *Smith* v. *Kingsley,* 19 Wend., 620: "The power, therefore, remains as at common law, except as to the mere form, *'coram nobis resident.'* . . . We, therefore, have lost the name of the writ, but nothing more."

As a striking and conclusive illustration of the necessity that the writ, or some substitute for it, should exist in criminal practice, we refer to *Calhoun* v. *State, supra; Sanders* v. *State,*

*supra,* and especially to the case of *Ex parte Gray,* 77 Mo., 160. The statute of Missouri provided that, when any person under eighteen years of age was convicted of a felony, he should be sentenced to imprisonment in the county jail, and not in the penitentiary. Gray, though under eighteen years of age when the felony was committed, had been sentenced to the penitentiary at a term of a circuit court, and after the adjournment of the term he filed his petition for this writ to have the judgment set aside; and, it appearing by satisfactory evidence that the fact was as stated, the judgment was revoked, in order that the defendant might be sentenced according to law. This is but one instance illustrative of the necessity of the writ in criminal practice, and a thousand might be conceived.

But whilst the writ is recognized as existing in this state (see *James* v. *Williams, supra; Fellows* v. *Griffin,* 9 Smed. & M., 362; *Parkinson* v. *Waldron,* 7 Smed. & M., 189), there is rarely any occasion to resort to this writ in modern criminal practice, as shown by the observations in *Martin Pickett's Heirs* v. *Ledgerwood,* 7 Pet., 144 (8 L. ed., 639), where the court say: "It cannot be questioned that the appropriate use of the writ of error *coram nobis* is to enable a court to correct its own errors—those errors which precede the rendition of judgment. In practice, the same end is now generally attained by motion, sustained, if the case require it, by affidavits; and it is observable that so far has the latter mode superseded the former in the British practice that Blackstone does not even notice this writ among his remedies. It seems that it is still in frequent use in some of the states, and, upon points of fact to which the remedy extends, it might be beneficially resorted to as the means of submitting a litigated fact to the decision of a jury—an end which, under the mode of proceeding by motion, might otherwise require a feigned issue, or impose upon a judge the alternative of deciding a controverted point upon affidavit, or opening a judgment, perhaps to the material prejudice of the plaintiff, in order to let in a plea. But in general, and in the practice of most of

the states, this remedy is nearly exploded, or at least superseded by that of amending on motion. The cases in which it is held to be the appropriate remedy will show that it will work no failure of justice if we decide that it is not one of those remedies over which the supervising power of this court is given by law." Usually, therefore, a simple motion or petition will accomplish the same purpose which the former procedure by way of writ of error *coram nobis* anciently secured.

Thus far as to the writ, its nature and office, and as to its still existing in criminal practice in this state in rare cases. But the difficulty in securing it in this case lies deeper. It is said in Am. & Eng. Ency. of Pl. & Pr., vol. 5, p. 29, that "an error of fact, for the purpose of this procedure, does not exist in newly discovered evidence." In *Sanders* v. *State,* 85 Ind., 329 (44 Am. St. Rep., 29)—by far the most luminous and exhaustive discussion of the subject we have anywhere found—it is said: "It is our opinion that the courts have the power to issue writs in the nature of the writ *coram nobis,* but that the writ cannot be so comprehensive as at common law, for remedies are given by our statute which did not exist at common law—the motion for a new trial and the right of appeal—and these very materially abridge the office and functions of the old writ. These afford an accused ample opportunity to present for review questions of fact arising upon or prior to the trial, as well as questions of law, while at common law the writ of error allowed him to present to the appellate court only questions of law. Under our system, all matters of fact reviewable by appeal or upon motion must be presented by motion for a new trial, and cannot be made the grounds of an application for the writ *coram nobis.* Within this rule must fall the defense of insanity, as well as all other defenses existing at the time of the commission of the crime. Within this rule, too, must fall all cases of accident and surprise, of verdicts against evidence, of newly discovered evidence, and all like matters." We think this a sound declaration of the present office and scope of this writ, from

which it necessarily follows that it cannot be invoked in our practice for the purpose of revoking the judgment by showing that jurors had formed or expressed opinions unfavorable to the defendant. Such assailment of the integrity of the trial jury, for reasons clearly apparent, was never within the scope and office of this writ. Without reference, therefore, to the question whether an appeal would lie from the action of the circuit judge denying this writ in vacation, it is enough to say that, if such an appeal does lie, the writ was properly denied. Because of the confusion existing as to the law touching this writ, we have gone somewhat fully into the matter, and attempted to make clear the present use and scope of this writ in the criminal practice of this state.

*Affirmed.*