HAWIE *v.* STATE.

[88 South. 167, No. 21518.]

1. CRIMINAL LAW. *Procedure, when insanity of defendant suggested, stated.*

   If, at the arraignment of a defendant charged with the commission of a crime, it is suggested or appears to the court that he may be insane, the question of his sanity *vel non* should be inquired into and determined, and, if he should be found to be then insane, his trial should not be proceeded with unless and until he recovers his sanity.

2. CRIMINAL LAW. *Test of sanity is whether defendant can make rational defense.*

   The test of a defendant's sanity in an inquiry to determine whether he shall be put on trial in a criminal case is whether he can then make a rational defense.

APPEAL from circuit court of Newton county.

HON. A. J. McLAURIN, Judge.

George Hawie was convicted of murder, and he appeals. Reversed and remanded.

*Burch & Enoch,* for appellant.

As a general rule, but with a few exceptions, the fact that the appellant was adjudicated insane as of date January, 1919, is a conclusive presumption of his insanity since that date; but it is a rule without any exception that such a finding is a rebuttable presumption. The state made not effort to rebut this presumption.

"If the previous inquiry found incompetency of the very kind and in respect to the very same capacities now again in controversy, the prior adjudication may be both admissible and conclusive." 3 Witthaus & Becker, Forensic Medicine (2 Ed.), p. 525; *O'Reilly* v. *Sweeney,* 54 Misc. 408, 105 N. Y. Supp. 1033; *Foran* v. *Healey* (Kan.), 85 Pac. 751, and *Soules* v. *Robinson* (Ind.), 62 N. E. 999.

"This is the case when there has been an adjudication of incompetency to transact the ordinary affairs of life, and a committee has been appointed, therefore the incompetent is, by force of the adjudication as evidence, conclusively proven incapable of transacting such ordinary affairs of lift as the making of contracts of sales, and the like." Whitthaus & Becker, *supra.*

Every authority and every argument advanced by the appellee in its brief is either made in total disregard of the fact that the appellant had been adjudicated insane prior to the time that he was tried, or upon the assumption that the trial court submitted to the jury both the issue of the appellant's guilt and his sanity at the time of his trial. There is no sort of foundation to support the argument that the issue of this appellant's sanity was submitted to the jury that tried him. To the contrary, the jury was repeatedly instructed that if they believed that the defendant had sufficient intellect to know right from wrong at the time of the homicide, it was their duty to convict him and the only reference made to the defendant's present sanity at all, was in an instruction asked for by and granted to the defendant in which said instruction merely stated that in case the jury should acquit him on

the grounds of insanity, that the jury should further certify as to whether he had since recovered, or was still dangerous and should be confined in an asylum.

In other words, the jury was not to consider the mental condition of the appellant at all, except in case they should acquit him on the grounds of insanity at the time of the homicide, and then they were only considering his sanity in the light of preventing him from doing further harm to society, and not in the light as to whether he was mentally capable of making his defense.

On the first day of April, 1921, the appellant was declared by a jury to be insane to the extent that he was incapable of conducting his defense or of so advising with others that they might make his defense for him and the jury at the time of rendering this verdict had in mind a trial had under the same indictment, upon which the trial here under consideration was had. It is conceded by the learned attorney for the appellee that a state of mind once found is presumed to continue until it is disproved. If a jury just four months and nine days prior to the trial here under consideration declared this appellant insane to that extent that he should not be tried for crime, and this presumption of his mental condition followed him down to the time of the trial here under consideration, why should we consume time in talking about partial insanity and general insanity when the degree of appellant's insanity was fixed by the jury?

When the appellant filed his application for the writ of error *coram nobis* before the same judge who tried this case, setting up in the said application that he was insane at the time of his trial in January, 1919, a demurrer was interposed by the state to the said application, which said demurrer was sustained by the court upon the idea that even though the appellant was insane, and that the allegations set forth in the application were true, that that court was without power to give any relief. An appeal was taken from the sustaining of this demurrer and this court told the trial court in that cause that, in its opinion, if the

defendant was insane at the time he was tried in January, 1919, to the extent that he could not make a defense, if any he had, that the judgment sentencing him to death should be set aside, and they directed that the defendant be given a hearing on the question of his sanity at said time. An issue was made up and a jury found that the defendant was in truth and in fact insane to the said extent, at the said trial. But notwithstanding this, the trial court with these proceedings spread upon the records, forced the appellant to trial without making any sort of test of his sanity at that time. This court held in *Ricketts* v. *Jolliff*, 62 Miss. 440.

"Sanity is presumed until the contrary appears, and the burden of proof is on the party alleging insanity to prove it; but where a person is shown to have been generally or habitually insane at any particular period; that condition is presumed to continue, and whoever relies on a lucid interval to support a contract subsequently made with such a lunatic must prove it and show sanity and competency at the time the contract is made."

A trial court has, and should have, some discretion as to when and how a person's sanity is to be tested on the eve of a trial; otherwise, every person charged with crime could raise the question of his sanity and arbitrarily force the court into the trial of this separate issue by merely alleging that he was insane, but we say the court had no discretion in instituting a proceeding to find insanity in the mind of this appellant, as that fact had already been determined by the same court, and that determination was of record in that court at the very time appellant was forced to trial. We, therefore say, that the court should have instituted a proceeding to determine whether the appellant had recovered his sanity since the said adjudication before they put him to trial, and that when the court failed to institute such a proceeding and forced the appellant to trial, it cannot be denied that his mental condition was such that he was incapable of making his defense because of insanity, and that the death sentence was im-

posed upon him at a time when, confessedly, he was wholly incapable of understanding the nature of the proceeding against him.

*Frank Roberson,* Attorney-General, by *H. Cassedy Holden,* Assistant Attorney-General, for the state.

The trial court has a discretion under Code 1907, section 7178, as to granting defendant's motion to execute an inquisition as to his sanity at the time of the trial. *Granberry* v. *State,* 63 So. 975, 184 Ala. 5; *Duncan* v. *State.* 162 S. W. 573, 110 Ark. 523; *People* v. *Fountain,* 150 Pac. 341, 170 Cal. 460; *People* v. *Kirby,* 114 Pac. 792, 15 Cal. App. 264.

(Ill., 1914.) Cr. Code, 285, while not expressly declaring that no one can be tried for a crime while insane, does not change the common-law while to that effect, nor does it change the common-law practice, which vested in the court a discretion to determine whether the issue of insanity should be tried before accused was tried for his crime. *People* v. *Favrilovich,* 106 N. E. 521, 265 Ill. 11.

(Iowa, 1906.) A finding of his insanity of defendant in proceedings under Code, sections 5540-5543, collateral to a prosecution, thereby suspending the prosecution, is not conclusive that when defendant was a week later committed to the insane asylum he was insane, and so does not render inadmissible, on the question of his insanity as the time of the commission of the offense, testimony that when received into the asylum he was not insane. *State* v. *Grendahl,* 109 N. W. 121, 131 Iowa, 602.

(N. M., 1910.) If, during the trial, the judge concludes that there is reason to doubt accused's sanity at that time, the question of sanity should be submitted to the jury along with the principal issue, requiring a special verdict on such point. *Territory* v. *Kennedy,* 110 Pac. 854, 15 N. M. 556.

(N. Y. Sup., 1909.) Where accused pleaded insanity, determination by a commission, appointed before trial, that he was sufficiently sane to understand the nature of the charges against him and conduct his defense in a rational

manner, was not an adjudication as to his then condition. *People* v. *Lamb,* 118 N. Y. S. 389.

(1844.)   To sustain a defense on the ground of insanity, it must be clearly proven that at the time of committing the act, the party accused was laboring under such a de-defect of reason from disease of the mind; as not to know the nature and quality of the acts he was doing, or if he did understand then, that he did not know that he was doing what was wrong.  *Kelly* v. *State,* 3 S. & M. 518, 1 Mor. St. Cas. 235; *Cunningham* v. *State,* 56 Miss. 269, 31 Am. Rep. 360n.

It is immaterial whether the accused is sane or insane upon other subjects if his insanity in respect to the homicide was of such a nature as to break down his capacity to distinguish between right and wrong.  (1884), *Grissom* v. *State,* 62 Miss. 167;  (1896), *Ford* v. *State,* 73 Miss. 734, 19 So. 665, 35 L. R. A. 117n.

(1893.)  Proof that one on trial for murder was subject to a strange infirmity, such that a sudden touch or cluck from behind would cause him to lose consciousness and self-control and strike any person near him, is no defense in the absence of evidence that the time of the killing he had been thus excited.  *Thomas* v. *State,* 71 Miss. 345, 15 So. 237.

(1856.)   To absolve from responsibility there must not only be mental delusion, but the crime must have been committed under its direct or necessary influence.  *Bovard* v. *State,* 30 Miss. 600, 1 Mor. St. Cas. 818.

(1856.)   Partial insanity is not excuse if the party can distinguish between right and wrong, and knows the act is criminal and punishable by law.  *Bovard* v. *State,* 30 Miss. 600, 1 Mor. St. Cas. 818.

(1896.)  Where the general or habitual insanity of the accused is shown on his trial for murder, the state has the burden of showing that the homicide was committed during a lucid interval; but where only temporary insanity is shown at a time anterior, without raising a reasonable doubt that it existed at the time of the homicide, the pre-

sumption of sanity dispenses with proof of lucid intervals. *Ford* v. *State*, 73 Miss. 734, 19 So. 665, 35 L. R. A. 117m.

(1916.) Mere frenzy or ungovernable passion which controls the will and motives is not insanity sufficient to excuse crime. *Garner* v. *State*, 112 Miss. 317, 73 So. 50.

SMITH, C. J., delivered the opinion of the court.

The appellant was convicted of murder in the circuit court of Rankin county, and thereafter his counsel applied for and were refused a writ of error *coram nobis*. The petition for the writ set forth that the appellant was insane at the time of his trial, which fact was unknown to his counsel, and consequently was not made known by them to the court, and prayed that the appellant's sanity *vel non* at the time of his trial be inquired into, and, in event he should be found to have been then insane, that the verdict and judgment therein rendered should be set aside.

An order sustaining a demurrer to this petition was reversed on appeal to this court, and the cause was remanded for a determination of the question raised thereby. *Hawie* v. *State*, 121 Miss. 197, 83 So. 158.

The record contains no order setting aside the judgment rendered by the circuit court of Rankin county, but, on the return of the cause thereto from this court, the venue was changed to Newton county, and when the cause was called by the circuit court thereof for trial a motion was filed by the appellant's counsel, setting forth that five days prior thereto a jury, impaneled by the court for the purpose of inquiring into the question of the appellant's sanity *vel non* at the time of his conviction in the circuit court of Rankin county, after hearing the evidence relative thereto, returned the following verdict:

"We, jury No. 1, find for the plaintiff in error, in that he was insane at the time of his trial and conviction at the January, 1919, term of the circuit court of Rankin county"—and prayed that proceedings against the appellant be suspended, and that notice of his condition be

given to the chancellor of the district or to the clerk of the chancery court so that the appellant might be dealt with in accordance with the statutes relative to insane persons.

When the cause came on for trial at the next term of court, the motion made at the former term to suspend the trial because of the defendant's insanity and to report his condition to the chancellor or clerk of the chancery court was renewed, but was overruled without any inquiry being made into the appellant's then mental condition, and the cause proceeded to a trial on its merits resulting in a verdict of guilty and a judgment imposing the death penalty. The appellant did not testify on this trial, and the only defense made for him by his counsel was that he was insane at the time the homicide was committed. No question relative thereto being raised by either the Attorney General or counsel for the appellant, we will presume that the judgment rendered by the circuit court of Rankin county was regularly set aside and a new trial ordered.

"It is a rule of universal application, and founded on the broad principles of humanity, that no insane person shall be tried, sentenced to any punishment, or punished for any crime or offense, while he continues in that state." 10 Enc. P. & P. 1218.

And if, at the arraignment of a defendant charged with the commission of a crime, it is suggested or appears to the court that he may be insane, the question of his sanity *vel non* should be inquired into and determined, and, if he should be found to be then insane, his trial should not be proceeded with unless and until he recovers his sanity. *Hawie* v. *State,* 121 Miss. 197, 83 So. 158; 2 Bishop's Criminal Procedure (4 Ed.), 296; 22 Cyc. 1215 et seq.; 16 C. J. 789; 14 R. C. L. 59. This rule cannot be complied with by simply postponing a trial or setting aside a verdict once because of the defendant's insanity, but each time thereafter when he is again called for trial, if a doubt arises as to his sanity, the court should proceed to determine that question anew (*People* v. *Farrell,* 31 Cal. 576), the test of insanity each time being whether the defend-

ant can then make a rational defense (2 Bishop's Criminal Procedure [4th Ed.] 297).

That the appellant was insane at the time of his trial in the circuit court of Rankin county was conclusively established by the verdict of the jury to which that question was submitted, but the setting aside for that reason of the judgment rendered by that court would be a vain and useless proceeding if the appellant is to be again tried without it being made to appear that he had recovered his sanity.

One of the reasons assigned by the Attorney General for not reversing the judgment of the court below on the ground that the mental condition of the appellant at the time. of the trial was not inquired into is that it was within the discretion of the court to, and it did, submit that question to the jury which tried the main issue, and the verdict then returned necessarily includes a finding that the appellant was then sane. Assuming for the sake of the argument that the question of a defendant's sanity *vel non* may be submitted to the jury which tried, and along with, the main issue, no such question was here submitted to that jury, as will appear from the instruction relied on as having so done which read as follows:

"The court instructs the jury in this case that, should the jury acquit the defendant on the ground of insanity, the jury shall state in the verdict that the defendant is acquitted on such ground, and, further, whether the defendant, in its opinion, has since the homicide been restored to his reason, and whether he be dangerous to the community, and if, the jury certify in its verdict that the defendant is still insane and dangerous, the court will order him to be conveyed to and confined in one of the state asylums for the insane."

*Reversed and remanded.*