## MITCHELL v. STATE.

(In Banc. Nov. 15, 1937. Suggestion of Error Overruled Dec. 6, 1937.)

[176 So. 743. No. 32896.]

W. I. Stone, of Coffeeville, and **Creekmore, Creekmore & Capers** and **Barnett, Jones & Barnett,** all of Jackson, for appellant.

818

**W. D. Conn, Jr.,** Assistant Attorney General, for the state.

Argued orally by **Ross R. Barnett** and **H. H. Creek-more**, for appellant, and by **W. D. Conn, Jr.**, for the state.

**Griffith, J.**, delivered the opinion of the court.

Appellant, a white man, was convicted of one of the most atrocious crimes ever committed in this state.  For

the purpose of robbing an old negro of his savings, appellant entered the home of the negro, knocked him and his son into insensibility with a blackjack, and burned down their dwelling house upon them. From the conviction and sentence of death an appeal was taken to this court, which affirmed the judgment and sentence, as appears, with a fuller recital of the facts, in Mitchell v. State, 176 Miss. 873, 170 So. 534.

Upon the affirmance by this court, appellant applied to the Governor for relief, upon the plea that appellant was insane at the time of the commission of the offense, was insane at the time of the trial, and has ever since so remained. The Governor granted a reprieve, and put appellant under the examination of competent experts at the insane asylum who, after extended observations, pronounced appellant sane, and the Governor refused to further interfere with the sentence of the law.

Within a few days before the date fixed for the execution, appellant filed a petition for a writ of coram nobis, alleging therein as he had alleged before the Governor; and the circuit judge of the district wherein the conviction was had being absent from his district on account of illness, the petition was presented to the circuit judge of another district, who ordered a stay of the execution and directed the clerk to issue the writ of coram nobis for the sole purpose of determining at the next term of the circuit court the sanity of appellant.

The aforesaid order of the circuit judge which stayed the execution of the sentence embraced in the judgment was made and issued without notice to the state, that is to say, without notice to the Attorney General or to the district attorney. It is laid down in the authorities, as must be under fundamental principles, that a writ of error coram nobis cannot issue except on notice to the opposite party, Comstock v. Van Schoonhoven, 3 How. Prac. (N. Y.) 258, 261; Crawford v. Williams, 1 Swan (Tenn.) 341-343. It follows as a logical legal sequence that when an application under a petition of the nature

here under consideration is made in vacation, and such action is to be taken thereon as to strike from the judgment by that action a material portion thereof, so that it will be necessary for the stricken portion to be restored by a subsequent judgment in term time, there is involved something more than a mere supersedeas or injunction on which bond is required, wherefore a reasonable notice to the other party is necessary to the same extent that a notice is necessary before the court can finally hear the petition on its merits. The circuit judge, before whom the preliminary order of stay of execution was presented, was therefore without proper authority to order the stay in the absence of notice to the state of such application.

When the petition came on for hearing before the circuit court wherein the original judgment was rendered, the district attorney responded thereto by what he termed a motion to dismiss, but which in fact set up, among other things, a plea of res adjudicata, and the pleading was treated in substance as a plea or answer, both sides introducing evidence, both oral and documentary; including the transcript of the original trial; and at the conclusion the court denied the petition and fixed a date for the execution, and an appeal has again been brought to this court.

Since the rendition of the opinions of the court in Hawie v. State, 121 Miss. 197, 83 So. 158, 10 A. L. R. 205, and Id., 125 Miss. 589, 88 So. 167, although the result reached in both those decisions was correct, the discussions made a part of those opinions have induced a course of practice in cases of death sentences which, under the experiences of the last few years, has become intolerable, and has produced such mischief as to bring the courts and the law into a measure of disrespect, in the hearing of numerous applications for the stay of executions and in the too frequent granting thereof. It may be asserted with confidence that during the last several years in the majority of cases in this state of

convictions with the death penalty of persons with any means, or with relatives or friends who have means to employ additional counsel, the convict is asserted to be insane as soon as the hangman is seen to approach with his noose, and the more atrocious the crime, and the greater the ability of the convict to feign unusual symptoms, the more ready are some mental experts to attest a supposed insanity. See Zane, The Story of Law, pp. 346-350. We have reached the point where it becomes the solemn obligation of this court to close some of the doors to the field by which judgments of conviction with death sentences may be made footballs, to be tossed from court to court, and from one delay to another.

The writ of error coram nobis has come down to us from the days of long ago, even from those days when people still believed in witchcraft. It was devised, not by legislation, but by the judiciary, as a suitable method to meet some of the extreme exigencies of justice under a judicial system in many respects different from ours; but being found in a measure available for use amongst us, has been in some states, including ours, recognized as an existing common-law remedy, and this too by judicial decision and not by legislative enactment. The common law, however, both in its substantive and in its adjective features, is not now, never has been, and never will be, static or stagnant. It has been one of the proudest boasts of the common law that it has within itself the potency of steady improvement, and this by judicial action, so long as that action is in accord with existing fundamental legal principles. It is the duty of courts, as attested by numerous decisions in this court, and in all courts throughout the nation, not only to keep the common law and its processes of enforcement abreast, or nearly so, with the substantial innovations of time, with the higher moral and material attainments in the general progress of enlightened civilization, proceeding always, however, upon established fundamental legal principles, 12 C. J., pp. 178-180, section 5; Yazoo & M. V. Railroad

Co. v. Scott, 108 Miss. 871, 67 So. 491, L. R. A. 1915E, 239, Ann. Cas. 1917E, 880; Gross v. State, 135 Miss. 624, 631, 100 So. 177; but also it is equally the duty of courts to see that the state of the law shall continually profit by the experiences and observations of the past and that, when such experiences have definitely disclosed a mischievous imperfection in previous precedents, the mischief shall be removed by recourse to another, and a fitter, legal principle. 7 R. C. L., page 1008, section 35; 15 C. J., page 957, note 19.

It has long been a settled principle of the common law that a judgment of a court of superior jurisdiction is conclusive by way of res adjudicata of all those issues involved in the record of the original trial, and which, being so involved, might have been therein litigated. Hardy v. O'Pry, 102 Miss. 197, 214, 59 So. 73. And especially is this true when as to a particular issue it was necessary for the court and jury to have decided that issue in order to warrant the verdict and judgment which were rendered. In order to warrant the rendition of a verdict and judgment for crime it is necessary that the judgment shall comprehend the issue that the accused, both at the time of the commission of the offense and at the time of trial, was of sufficient mental soundness to be held to criminal accountability and to be subject to a trial therefor, with the result that when a verdict of guilt and a judgment of condemnation have been returned and entered, that action is res adjudicata of both the issues mentioned.

To remove to the extent now deemed requisite the mischief which we have hereinabove mentioned, we take recourse to the better and fitter legal principle which we have outlined in the foregoing paragraph. We decline to follow further that line of cases found in some jurisdictions which hold, or apparently hold, that for the first time after conviction the plea of insanity may be raised, and thereby a new train of hearings and rehearings upon that issue may be put in motion, to end only when in-

genuity has been exhausted, or the money for defense is all spent. And we hereby overrule any and all of our previous cases to the extent that they, or any of them, are in conflict with what we are here laying down. It is only when the insanity has developed and become present since the trial that we leave the door open to suspend a judgment or sentence upon that issue—and we have no such alleged case here. We place the issue of insanity upon the same basis of fact as that found in Bennett v. State, 106 Miss. 103, 63 So. 339, and we expressly reaffirm what was said in that case. And we call attention to the two cases cited in that opinion, to-wit, Sanders v. State, 85 Ind. 318, 329, 44 Am. Rep. 29, and Fugate v. State, 85 Miss. 94, 37 So. 554, 107 Am. St. Rep. 268, 3 Ann. Cas. 326. In the Sanders Case it was directly held that the issue of insanity at the time of the commission of the crime as well as at the time of the trial cannot be made the subject of a petition for a writ of coram nobis, and the opinion in the Fugate Case quotes at page 102 of 85 Miss., 37 So. 554, with express approval, what was said on this subject in the Sanders Case. What we are doing in the present case is, therefore, simply to return to original principle, which at last is that of res adjudicata, as we have already set forth, and from which there should not have been any departure, as unfortunately did later happen, in the particular class of cases here under consideration.

We have not overlooked the argument that the original trial was no trial at all, and therefore was without due process of law, because, as has been suggested, the attorney for appellant in the trial was negligent, and by reason thereof failed to distinctly present in that trial the plea of insanity, and failed to prosecute that issue with proper vigor; and we note also the contention that appellant is not bound by what the attorney did or failed to do in that trial it being urged that an insane man can have no agent and therefore no attorney. It is true that an insane person can have no contractual agent, but it is equally true that a person non compos mentis may have

an agent appointed by law. Numerous examples may be given of this fact, one of which is that service of process on an insane defendant may be made upon the superintendent of the insane hospital where the defendant is confined. The law requires the court to appoint an attorney to defend in all capital cases, when otherwise the defendant would have no attorney; and the attorney so appointed is the agent of the defendant within the scope of the duties of the appointee whether the defendant be sane or insane; and an insane defendant is as much bound by his attorney's actions, when within the legitimate scope of his duties, as if the defendant were sane, and an attorney employed by the defendant or his relatives, and accepted by the court, occupies a position of no less importance. If all this were not true, no trial could be had, and no authoritative judgment could be pronounced, where a defendant claimed to be insane; and no person so claiming could ever be punished for crime until he became ready voluntarily to submit to punishment, which introduces the obvious proposition that none of them will ever volunteer to be hung.

The entire record discloses that there is no just ground to aver that the attorney was negligent, even if that were here material. He had been employed some ten days before the trial, and he had with him the presence and assistance of members of appellant's family. He had information of all the deliberate circumstances of the planning of this robbery and murder, the cautious details of its execution, and the well-reasoned scheme of the flight into another state, where appellant remained hidden under an assumed name for more than three years and until he was detected and returned for trial. All that the attorney had before him, or upon diligence could ascertain, was that the defendant was a cruel, crafty, and designing murderer, with full sensibility at all times of the nature and consequences of his act, and of his accountability to the law therefor. Rather than take the risk of a plea of insanity which could not be sustained, the attorney

did the best he could, and produced the evidence of the defendant that he had no recollection of the crime, and the testimony of relatives that appellant suffered from periods of forgetfulness, hoping thereby to avoid the extreme sentence of death; and that the jury rejected the bid for mercy was no fault of the attorney.

Affirmed, and Friday, December 17, 1937, is fixed as the day of execution.

Affirmed.

**Smith, C. J.,** delivered a separate opinion.

This is a proceeding in which the appellant made an unsuccessful attempt in the court below to have a judgment convicting him of murder, and sentencing him to death, vacated, and he be granted a new trial. He was convicted and sentenced on January 22, 1936, and on an appeal therefrom the judgment was affirmed, 176 Miss. 873, 170 So. 534, and Friday, December 11th, 1936, was set for the execution thereof. The appellant then applied to the Governor for clemency, and was granted a reprieve so that his application therefor might be considered. The Governor finally declined to extend the clemency requested. The day for the expiration of the reprieve, and on which, under the law, the sentence would have been executed, was April 15, 1937. On the 10th day of that month, the judge of the court below being ill in a hospital in Memphis, counsel for the appellant appeared before the Honorable R. B. Anderson, a judge of another circuit court, and presented a written petition to him, the caption of which indicated that it would be filed in the court which rendered the judgment. Stripped of its irrelevancies, the petition alleges in substance that the appellant was insane both at the time the crime of which he was convicted was committed, and when he was tried therefor, and is now, which fact was not known to his counsel, without negligence on his part, at the trial. The prayer of the petition is: ''That this Honorable Court

will enter an order granting a writ of error coram nobis with stay of execution of the death sentence of said William C. Mitchell, for the sole purpose of determining, according to law, as to whether or not the said William C. Mitchell was insane at the time of aforesaid trial and/or whether he is now insane, and award said William C. Mitchell a trial at the next regular term of the circuit court of Yalobusha county, first district, State of Mississippi, on the question of his sanity or insanity as aforesaid."

The allegations of the petition were verified by the oath of the attorney who represented the appellant at his trial, and as to the appellant's insanity by the oath of a physician. Evidence was also presented to the judge, who thereupon issued his fiat or order, directing the clerk of the court below to issue a writ of error coram nobis, with stay of execution of the death sentence as prayed for. No writ of error coram nobis was issued on this fiat, and as this court has heretofore said, it was not necessary so to do. The clerk did issue a writ directed to the sheriff, commanding him not to execute the appellant pending the hearing and determination of his application for vacating his judgment of conviction. The petition and its supporting affidavits, and the judge's fiat thereon, were then filed in the court below, and the day set for the execution of the appellant passed without his being executed. No notice was given either the district attorney or the attorney general that this petition would be heard by Judge Anderson, or of its filing in the court below. The district attorney, however, appeared when the court below convened, and filed a motion to quash the writ of error and dismiss the petition, which, stripped of its irrelevancies, alleges six grounds for dismissing the petition, three of which are, in effect, demurrers; and three are, in effect, pleas in bar of the petitioner's right to have the judgment vacated. The pleas in bar are: (1) "Due diligence is not shown on the part of William Clark Mitchell and his attorneys;" (2) Mitchell's insanity vel

non at the time of his trial is res adjudicata; "that said defense was offered at the time of said trial, evidence introduced in support thereof, and the trial jury was instructed in regard to such matter and such defense, said defense was passed on and refuted by the said trial jury in its verdict of 'guilty as charged,' as is shown by the record of said trial;" and (3) "the defense of insanity was also raised by the defendant and his counsel in the Supreme Court of the State of Mississippi," as appears from the brief filed for him in that court on the appeal thereto.

Without further pleading, the case proceeded to trial before the judge of the court without a jury, and the district attorney and counsel for the appellant introduced parol and documentary evidence. The motion was then sustained, the petition was dismissed, and a new date was fixed for the execution of the sentence, in accordance with section 1311, Code of 1930.

I shall not pause to follow counsel in their attempt to ascertain when the common-law writ of error coram nobis will lie, and the procedure therefor. My experience, observation, and information acquired from reading judicial opinions justify me in saying that lawyers and judges who now attempt to deal with the archaic writ of error coram nobis, which had become obsolete in England before Blackstone wrote his Commentaries, become lost in the mist and fog of the ancient common law, and are unable to ascertain what there was the exact effect of and procedure for obtaining such a writ. Interesting but not entirely successful efforts to ascertain these facts appear in Fugate v. State, 85 Miss. 94, 37 So. 554, 107 Am. St. Rep. 268, 3 Ann. Cas. 326; Carraway v. State, 163 Miss. 639, 141 So. 342; and in articles by Simon Rosenthal, W. L. McKay, and A. J. Farley, in 6 Mississippi Law Journal, at pages 133, 143, and 327. It will be sufficient for me here to say that the writ issued out of chancery, as all original writs then did, in the name of the King, commanding the judges of the court rendering the judgment

sought to be vacated to examine the complaint thereof, and do justice according to law. The procedure thereafter in the court which rendered the judgment was that which should be followed when a simple motion which this court has heretofore held is now the proper procedure, is filed in the court which rendered the judgment for vacating it and granting a new trial. No writ of error coram nobis is necessary, as this court has more than once said; and if members of the bar and trial judges would only remember and act on this, much trouble would be saved them and this court. A motion or petition to vacate a judgment rendered at a former term of the court is the initial pleading in a new proceeding, civil in its nature, and notice thereof must be given to the opposing party. The pleading thereafter is that in civil cases, and is practically the same as that under the old writ of error coram nobis procedure, as will appear from Chambers v. State, 117 Fla. 642, 158 So. 153. The sufficiency of the motion may be challenged by a demurrer, or its allegations may be traversed, or facts in bar thereof may ·be pleaded, to which the movant may reply. Issues of fact should then be tried by a jury. Though this procedure was not here followed, the result reached in the court below was correct.

What is said to have occurred in the Supreme Court on the appeal to it from the judgment of conviction, of course, has no bearing on the question presented by the motion to vacate the judgment. If Mitchell was insane when the motion for vacating the judgment was filed, no ground would thereby be presented for vacating the judgment, nor for suspending the execution of his sentence, unless it was made to appear that he became insane since the judgment was rendered; and such does not appear from this petition, or the evidence introduced in support of it. Lewis v. State, 155 Miss. 810, 125 So. 419.

It is said that the judge who granted the writ of error coram nobis, and suspended the execution of the appellant's sentence, should have not so done unless and until

notice of the application therefor had been given the district attorney or the attorney general. According to 1 Archbold's Practice, page 277 et seq., no notice was necessary at common law of an application for a writ of error coram nobis, or for an order suspending the execution of the judgment until the application for vacating the judgment complained of could be heard. All that was necessary was for the opposing party to be notified before the application for vacating the judgment was heard on its merits. No notice was here given to the district attorney or the attorney general of the motion to vacate the judgment, but that fact is of no consequence, for the reason that the district attorney appeared and was heard thereon. When a motion is filed, properly verified, and setting forth a prima facie case for vacating a judgment imposing the death penalty, with or without a writ of error coram nobis, if a supersedeas is necessary in order to prevent the judgment from being executed before the motion is heard, the supersedeas may be granted by the court itself, or by a judge, either thereof or of another court, under section 742, Code of 1930. The court below was not in session when this motion was filed, and the judge thereof was not accessible to counsel for the movant. That statute does not require notice to the opposing party, and in some instances time will not permit the giving of such a notice. It would be well, of course, for the judge to whom the application for the supersedeas is made, if time permits, to require notice to be given the opposing party before hearing the application. Such is the course pursued by the judges of this court. See rule 31 of this court, 161 Miss. 908.

I come now to whether the alleged insanity of the appellant at the time of his trial, not then made known to the court, presents a ground for vacating his judgment of conviction. Insanity at the time of a defendant's trial is not embraced in the issue of his guilt vel non of the crime charged. If that fact is made known to the trial court, it must, before trying the case, inquire

into and determine the defendant's then sanity vel non, with a jury if necessary, before proceeding with the trial. The two Hawie Cases (Hawie v. State, 121 Miss. 197, 83 So. 158, 10 A. L. R. 205; Id., 125 Miss. 589, 88 So. 167), and 2 Bishop Cr. Prac. (4 Ed.), section 666. Or according to some courts both issues may be presented separately to the same jury. The record of the trial in which the appellant's judgment of conviction was rendered was introduced in evidence, and discloses that insanity is not mentioned therein; that no issue of the defendant's sanity vel non at the time of the trial was presented, and the instructions given by the court to the jury do not deal with insanity either at the time of the commission of the crime or at the time of the trial. The insanity vel non of the appellant at the time of the trial is not, therefore, technically res judicata here, was in effect so held in Buckler v. State, 173 Miss. 350, 161 So. 683, and Bennett v. State, 106 Miss. 103, 63 So. 339, in no way conflicts therewith.

The power of a court to vacate a judgment rendered by it at a former term thereof rests, not upon a statute, but on the common law. That the courts of this state have such power is firmly imbedded in its jurisprudence by many decisions of this court. The grounds for vacating such a judgment are such as this, the Supreme Court, may adopt, and which seem to it necessary for the administration of justice. This court heretofore has been very careful in this regard; and so far only a limited number of facts have been held sufficient for vacating such a judgment. I will not catalogue these facts, but insanity at the time of the trial, not then made known to the court, was held by this court to be a ground therefor in Hawie v. State, 121 Miss. 197, 83 So. 158, 159, 10 A. L. R. 205, decided in 1919. It has not since exercised the power on that ground and has heretofore been requested to do so but once. Buckler v. State, 173 Miss. 350, 161 So. 683. The power of a court to vacate a judgment rendered by it at a former

term is one necessary for the prevention of a miscarriage of justice and should not be surrendered, but of course should be confined within the narrowest limits compatible with justice.

The test of insanity at the time of a defendant's trial "is not precisely the same as on the main issue; it is whether the defendant can make a rational defense," 2 Bishop's Criminal Procedure (4 Ed.), section 667, Hawie v. State, supra, and Hawie v. State, 125 Miss. 589, 88 So. 167; i. e., whether he is mentally capable of remembering facts on which his defense rests, and advising his counsel thereof. I think it can be safely said that it is hardly possible for a defendant's counsel, in discussing his case with him, as he must do in order to prepare his defense, not to discover the fact, if such exists, that the defendant is mentally incapable of remembering and advising him of the facts bearing on and necessary to his defense. Should the attorney have reason to suspect that his client is mentally so incapable, I cannot conceive of his, under his oath of office, not communicating that fact to the court in such manner as to render it the court's duty to inquire thereinto. This being true, it is hardly probable that any injustice will be done a defendant by declining to vacate his judgment of conviction on the ground that at the time of the trial he was mentally incapable of aiding his attorney in making a rational defense, provided his attorney was then given an opportunity for proper conference with him.

The first of the two Hawie Cases, supra, in which the only question presented to and decided by the court was the one here under consideration, was rightly decided on its particular facts, and when the opinion therein is confined thereto, as it should be (Pass v. McRea, Coffman & Co., 36 Miss. 143; Black's Law of Judicial Precedents, 188 and 198, section 64), it will not follow therefrom that the judgment here under consideration should be vacated. What occurred there was this: When

Hawie's case was called for trial, counsel were appointed for him under what is now section 1262, Code of 1930. They were given an opportunity for "only a short conference" with him before he was placed on trial, and no relative or friend of Hawie's was present to advise with them. A longer conference with him, for which they should have been given an opportunity, would have revealed his state of mind to them. Such being the case, justice required that his conviction be set aside, and a new trial granted him. That justice there so required was demonstrated by the fact that Hawie was afterwards adjudged insane at the time of his trial. See the second of his cases, supra. Such was not here the case. The appellant's attorney was employed more than a week before his trial, had ample opportunity for and did have conferences with him, and no delay of the trial was requested on that ground. The conclusion I have reached does not conflict with or necessitate the overruling of any of our former decisions. The only ones with which it could even apparently conflict are the first of the two Hawie Cases and Buckler v. State, both supra. When the opinion in the Hawie Case is limited in its scope, as I have indicated, no conflict herewith appears. Buckler's appeal was dismissed as not being from a final judgment, and the court was not called on to, and did not, determine whether his petition set forth a proper ground for vacating his judgment of conviction; consequently that case is also not in conflict herewith.

But aside from all this, it is manifest from this record that Mitchell was not insane at the time of the trial in which his judgment of conviction was rendered. He testified there in his own behalf, which testimony in full was introduced in evidence in the court below, on the trial of the issue presented by the petition to vacate that judgment. His examination at the trial covered a long period of time, fully tested his capacity to remember and relate facts, and disclosed that he had advised his

counsel of every fact that bore on his defense to the crime with which he was charged then known to him. That defense was, and Mitchell so testified, that he would occasionally suffer lapses of memory, covering short periods of time, and that the time of the homicide with which he was charged was one of these periods. That he could not remember what occurred at the time of the commission of the offense with which he was charged of course presented no ground for the court's declining to proceed with his trial.

I am of the opinion that the judgment of the court below should be affirmed.