### GRAHAM v. STATE.

(In Banc. March 13, 1944.)

[17 So. (2d) 210. No. 35392.]

**Engle & Laub,** of Natchez, for appellant.

Greek **L. Rice**, Attorney-General, by **R. O. Arrington**, Assistant Attorney-General, for appellee.

Argued orally by **S. B. Laub** and **C. F. Engle**, for appellant, and by **R. O. Arrington**, for appellee.

**McGehee, J.,** delivered the opinion of the court.

Under an indictment charging him with the theft of eight head of cattle, the appellant Robert Graham was convicted in the circuit court of Adams County, Mississippi, on the charge of grand larceny and sentenced to serve a term of five years in the state penitentiary. The proof disclosed that fifteen head of cattle belonging to Messrs. Newman and Crawford were either stolen from Glasscock Island in the Mississippi River during the month of April 1942, or had later escaped from said island, and that in September thereafter four of them were found in the pasture of the appellant in the State of Louisiana opposite the western shore of the said island. Glasscock Island consists of approximately 19,800 acres of land, and the accused owned a cotton plantation of approximately 5,000 acres and had leased approximately 5,000 additional acres of pasture land in the State of Louisiana during the said year of 1942, in which he kept about 600 head of cattle, the majority of which cattle had been purchased at auction sales at Ferriday, Tallulah and Monroe and other places in Louisiana and at Natchez and Port Gibson, Mississippi.

After his trial and conviction, the appellant filed a petition for a writ of error coram nobis, which is now before this court by virtue of an order of a Justice hereof rendered subsequent to the denial of the petition by the circuit judge, and which proceeding, by agreement between counsel for appellant and the Attorney-General, is a part of the record in this cause. The ground upon which the petition is predicated is that Glasscock Island is in the State of Louisiana and that therefore neither the circuit court nor this court has jurisdiction in the case.

In the case of Hogue v. Stricker Land & Timber Co., decided March 31, 1933, by the District Court of the Southern District of Mississippi, Western Division thereof, reported in 2 F. Supp. 905, 908, involving the title of certain lands, the location of which was necessary to be determined on the issue of the court's jurisdiction in the case, it was said as to Glasscock Island that:

"The court finds from the evidence that the main channel of the river formerly ran east of the island. This island was never wholly destroyed by erosion; so, when the river changed its main channel to the west of it, the island remained in the state of Louisiana, and the boundary between the two states did not shift, but remained in the center of the old channel, as it was when the water ceased to flow continuously therein."

The opinion and decision in the Hogue case, supra, was affirmed by the Circuit Court of Appeals for the Fifth Circuit, 69 F. (2d) 167, and the Supreme Court of the United States denied certiorari, as shown by 293 U. S. 591, 55 S. Ct. 106, 79 L. Ed. 686.

It further appears, however, that under Joint Resolution Number 4 of Congress, approved Jan. 26, 1909, Vol. 35 U. S. Stat. at Large, P. 1160, the Congress gave its consent that the States of Mississippi and Louisiana could agree upon a boundary line and settle the criminal jurisdiction to be exercised by each over the Mississippi River, and that under Chap. 140, Laws of 1910, Section 1179

et seq., Code of 1930, the Legislature of Mississippi pro-
vided that the counties of this state lying immediately
on the Mississippi River shall, respectively, have and
possess criminal jurisdiction within the territory em-
braced by extending their boundary lines which strike
the said river on a continuous and direct course to the
extreme western bank thereof, but further provided in
Section 4 of the said Act that the same should take effect
and be in force from and after the date when the State of
Louisiana shall pass a similar act as to the waters, islands
and territory mentioned.

We must take judicial knowledge of the territorial
boundaries of the state, and of the fact that the State of
Louisiana has not passed an act similar to the said Chap.
140, Laws of 1910, Section 1179 et seq., Code of 1930—a
condition precedent to the effectiveness of our statute in
that behalf and made so by the express language thereof.

Under Joint Resolution Number 5 of Congress, ap-
proved January 26, 1909, Vol. 35 U. S. Stat. at Large, P.
1161, the Congress gave its consent that the States of
Mississippi and Arkansas might likewise extend the juris-
diction of their criminal courts, and under Chap. 141,
Laws of Mississippi 1910, and Act 290, Acts of Arkansas
1909, these two states have availed themselves of the con-
sent of Congress to such extension of the criminal juris-
diction of their courts, and this court in the case of State
v. Cunningham, 102 Miss. 237, 59 So. 76, 79, Ann. Cas.
1914D, 182, held that pursuant to these statutes the cir-
cuit court of Tunica County, Mississippi, had jurisdiction
to try a person for selling intoxicating liquors west of
the center or thread of the stream of the Mississippi
River, due west of Tunica County, Mississippi, the court's
jurisdiction being derived solely from the said Resolution
of Congress and the two statutes enacted pursuant there-
to.

The rationale of the decision in the Cunningham case,
supra, was that "when the three sovereign powers give
their consent, there is no other power to object; there

being nothing in the Constitution of the United States and nothing in the Constitutions of the states to prevent it." However, in the case at bar, the State of Louisiana has not ceded to the criminal courts of Mississippi any jurisdiction to try offenses that may be committed within the territorial boundaries of the former state, even though the place of the crime is shown to be on an island in the Mississippi River, but within the territorial boundaries of Louisiana. In the instant case, it is shown that Glasscock Island consists of Sections 65, 66, 67 and 68, Township 5 North, Range 9 East of the Louisiana meridian, together with the accretions thereto, and that the said sections were surveyed and patented by the United States as being in the State of Louisiana, as shown on a map on file in the Department of Interior, United States General Land Office.

But it is said that the failure of the State of Louisiana to pass a similar act as provided in Section 4 of Chap. 140, Laws of 1910, is immaterial in view of Section 15 of the Act of Adoption of our Code of 1930, Laws 1930, Chap. 210, since Section 4 of the Laws of 1910 was not brought forward in our said Code of 1930, it being provided by Section 15 of the said Code that: "The Mississippi Code of 1930 shall take effect and be in force from and after the first day of November, 1930, and all laws of a general character not brought forward or embodied in said code, except laws granting exemptions from taxation for a period of years, shall be thereafter repealed; but this shall not apply to any act of the present legislature which is not incorporated in said code."

We are unable to agree with the contention on behalf of the state last above stated for the reason that Section 9 of Article 1 of the Louisiana Constitution of 1921 provides that all trials shall take place in the territorial jurisdiction in which the offense was committed. Moreover, the Congress has not given its consent for the State of Mississippi to extend the jurisdiction of its criminal courts in the manner contended for without the joint

consent and action of the State of Louisiana in the premises.

It is urged by the state, however, that this question of territorial jurisdiction can not now be reviewed under an application for a writ of error coram nobis, since all matters of fact, reviewable by appeal, or upon motion, must be presented to the trial court, wherein the judgment appealed from was rendered, for the reason that such judgment is conclusive by way of res adjudicata of all of the issues which could have been there determined. In support of this contention, the cases of White v. State, 159 Miss. 207, 131 So. 96; Cummins v. State, 144 Miss. 634, 642, 110 So. 206; and Mitchell v. State, 179 Miss. 814, 176 So. 743, 121 A. L. R. 258, are cited. This rule, however, does not apply to matters of which courts are required to take judicial notice. Section 59, Volume 20, Am. Jur., p. 81, reads as follows: "All courts of justice are bound to take judicial notice of the territorial extent of the jurisdiction exercised by the government, the laws of which they administer, and of the extent and boundaries of the territory under which they themselves can exercise jurisdiction." Moreover, the question of jurisdiction of the subject matter may be raised for the first time on appeal, and it becomes the duty of this court to determine whether it has jurisdiction in a case as a condition precedent to its right to decide the issues involved, where the want of jurisdiction is suggested by the record or appears from a geographical, historical or other fact of which the court must take judicial notice.

In view of this conclusion, we deem it unnecessary to decide whether the question of territorial jurisdiction should have been raised by motion or upon petition for the writ of error coram nobis; nor is the result reached herein intended either as an approval or disapproval of the procedure followed. We express no opinion as to the proper procedure in that regard for the reason that the only point made and discussed in the briefs as to the relief sought on that ground on this appeal is whether or not

the failure of the accused to raise the issue in the court below precludes us from considering such want of territorial jurisdiction when the same is brought to our attention as a fact of which we should take judicial notice; and, therefore, we merely hold that the circuit court of Adams County, Mississippi, was without jurisdiction to proceed with the case when it was disclosed by the testimony on behalf of the state that the cattle in question were claimed to have been taken in some manner from Glasscock Island and transported by some unknown person onto the mainland of the State of Louisiana, and that consequently the conviction and sentence must therefore be reversed and the appellant discharged.

Reversed and judgment here for the appellant.

### ADDITIONAL STATEMENT.

**Griffith, J.,** delivered the opinion of the court.

The opinion in this case has been drawn in conformity to the usual rule that when it is found that the trial court had no jurisdiction, the appellate court in its opinion will not go into the merits, further than to develop the jurisdictional question. Simple justice to this appellant requires, however, that a statement by another member of the court be made of the fact, for it is a fact, that before arriving at the final determination that there was no jurisdiction, the court had reviewed this entire record and had come to the conclusion that there is no substantial merit in this prosecution; that appellant was entitled to be discharged on a peremptory instruction, and that this would have been the judgment of this court had the jurisdictional question not intervened.