**ASHLEY v. PESCOR, Warden.**

**No. 12911.**

Circuit Court of Appeals, Eighth Circuit.

Jan. 8, 1945.

Motion to Withdrawn Opinion Denied
March 13, 1945.

James R. Ashley, in pro. per.

Otto Schmid, Asst. U. S. Atty., of Kansas City, Mo. (Maurice M. Milligan, U. S. Atty., of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, WOODROUGH, and JOHNSEN, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from an order discharging a writ of habeas corpus and restoring appellant to the custody of appellee as warden of the Medical Center for Federal prisoners. Appellant's petition for writ of habeas corpus charged that he was being illegally restrained of his liberty in violation of his constitutional rights and without due process of law, in that while he was insane he was placed on trial and convicted in the United States District Court for the Western District of Louisiana for the alleged violation of Section 338, 18 U.S. C.A., under indictment which in effect charged him with having devised a scheme and artifice to defraud and to have used the United States mails in furtherance of such scheme to defraud. Based on his petition the court issued the writ. Appellee in his return denied generally the allegations of appellant's petition, except that he admitted that appellant was in the custody of appellee. He attached to his return photostatic copies of the commitments and or-

ders under which petitioner was held. We shall refer to the appellant as petitioner and to the appellee as respondent, as they were designated in the trial court.

The question of fact to be determined was whether or not petitioner was insane at the time of his trial and conviction in the United States District Court for the Western District of Louisiana, and the questions of law were whether such an issue might be tried on petition for habeas corpus, and if so, how such insanity, if established, would affect the legality of petitioner's restraint or imprisonment. Much that had been said by the Federal courts and by text-writers as to the scope of inquiry on petition for writ of habeas corpus was rendered obsolete by the decision of the Supreme Court in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461, 146 A. L.R. 357, and the subsequent decisions of that court following the doctrine of the Zerbst case. In that case the court among other things said: "To deprive a citizen of his only effective remedy would not only be contrary to the 'rudimentary demands of justice' but destructive of a constitutional guaranty specifically designed to prevent injustice."

In the Zerbst case the accused was not represented by counsel, and the court held that failure to provide counsel for the accused, who was unable to obtain counsel, and who had not intelligently waived his constitutional guaranty, rendered the conviction void because "pronounced by a court without jurisdiction." It is then said: "A judge of the United States—to whom a petition for habeas corpus is addressed—should be alert to examine 'the facts for himself when if true as alleged they make the trial absolutely void.'"

In the instant proceeding the court expressed the view that the question of the incompetency or insanity of the defendant could not be tested by habeas corpus because he had been represented by counsel at the time of his conviction. Of course, if not represented by counsel, unless he had intelligently waived the right of assistance of counsel, he could under the rule announced in the Zerbst case test by habeas corpus the validity of his restraint regardless of whether he were sane or insane at the time of the trial.

The defendant is entitled to be present at the time of trial so as to render assistance to his counsel, and if insane, while he may be physically present he is mentally absent, and his insanity may be of such a nature as to render him wholly unable to be of any assistance to his counsel. Freeman v. People, 4 Denio, N.Y. 9, 47 Am.Dec. 216; People v. Perry, 14 Cal.2d 387, 94 P.2d 559, 564, 124 A.L.R. 1123. In the last cited case, the Supreme Court of California, referring to a statute of that state, Pen.Code, § 1367, which provided that, "A person cannot be tried, adjudged to punishment, or punished for a public offense, while he is insane," among other things said:

"The principle of law by virtue of which an insane man, even though incontestably guilty of the commission of a criminal offense, may neither be tried, sentenced, nor punished for his dereliction in that regard, is of long standing. In 4 Blackstone Commentaries, 24, it is said: 'Also if a man in his sound memory commits a capital offense, and before arraignment for it, he becomes mad, he ought not to be arraigned for it; because he is not able to plead to it with that advice and caution that he ought. And if, after he has pleaded, the prisoner becomes mad, he shall not be tried: for how can he make his defence? If, after he be tried and found guilty, he loses his senses before judgment, judgment shall not be pronounced; and if, after judgment, he becomes of non-sane memory, execution shall be stayed; for peradventure, says the humanity of the English law, had the prisoner been of sound memory, he might have alleged something in stay of judgment or execution. Indeed, in the bloody reign of Henry the Eighth, a statute was made, which enacted that if a person, being compos mentis (of sane mind) should commit high treason, and after fall into madness, he might be tried in his absence, and should suffer death, as if he were of perfect memory. But this savage and inhuman law was repealed by the statute 1 and 2 P. and M., c. 10. * * *'"

In Forthoffer v. Swope, Warden, 103 F. 2d 707, 709, a habeas corpus proceeding, the Circuit Court of Appeals of the Ninth Circuit among other things, said:

"At common law habeas corpus would lie where the judgment, sentence, or order was fatally defective upon the face of the record; the writ could be invoked only where lack of jurisdiction patently appeared if the court was of general jurisdiction; and it could not be employed to

320

retry the issues, whether of law, constitutional or other, or of fact. 29 C.J. § 46, p. 54; 29 C.J. § 20, p. 33; Zoline's Fed. Crim. Law, Vol. 1, § 530, p. 435; Glasgow v. Moyer, [etc.], 225 U.S. 420, 32 S.Ct. 753, 56 L.Ed. 1147.

"However, the rights of a party on petition for a writ of habeas corpus have been considerably expanded since the filing of the opinion of the Supreme Court in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, [146 A.L.R. 357), reversing 5 Cir., 92 F.2d 748."

The court in effect held that the issue might properly be presented on petition for writ of habeas corpus but "that the burden of proof rests upon the petitioner to offer facts which would justify a court of the United States in setting aside a judgment of another court of the United States, a thing not lightly to be undertaken."

■ We think the question is one which may properly be inquired into in a proceeding for writ of habeas corpus, especially where, as here, the fact of insanity has been judicially determined prior to petitioner's trial and conviction.

■ As has been observed, at common law an insane person, using that term in its broadest sense, could not be subjected to a trial in a criminal case. In re Smith, 25 N.M. 48, 176 P. 819, 3 A.L.R. 83; Hawie v. State, 121 Miss. 197, 83 So. 158, 10 A.L.R. 205; Freeman v. People, supra; Forthoffer v. Swope, supra; People v. Perry, supra. The term insanity, however, as used generally has various shades of meaning. It differs in kind and character and is not subject to a precise definition universally applicable. Usually it denotes a condition of mind so impaired or deranged as to cause a deviation from normal conduct. A reasonable test for determining whether a mental affliction renders a person incapable of binding himself absolutely by contract is whether his mind has been so affected as to render it impossible for him to understand the nature and consequences of his act or the character of the transaction in question. Various tests of insanity have been applied in determining mental impairment in criminal cases. In such cases the test is whether the defendant has the ability to distinguish between right and wrong. The law concerns itself with the effect of insanity, rather than with its cause. We need not here consider the question as to whether at the time petitioner was alleged to have committed the crime charged, he had the ability to distinguish between right and wrong. The test to be here applied is whether the accused, even though not entirely sane, comprehended his own condition with reference to the accusation pending against him, and whether he could rationally conduct his defense. Freeman v. People, supra.

In the instant proceeding, the court, though expressing the view that the question of petitioner's mental capacity at the time of the trial was not open to inquiry, found, nevertheless, that petitioner was sane at the time he entered his plea of guilty; that when he entered his plea of guilty he was represented by counsel, and that no contention was made at that time that petitioner was not competent to stand trial; that the judge who pronounced the sentence was not informed that petitioner was insane but had every reason to believe that he was sane at the time sentence was imposed. We find no evidence in the record bearing upon or tending to prove these facts.

■ There is, of course, a presumption of sanity, but the presumption is a rebuttable one. Except for this presumption, we find no support in this record for the finding that the petitioner was sane at the time of his trial and conviction in the District Court for the Western District of Louisiana. Respondent's return shows that petitioner was committed to the United States Penitentiary at Leavenworth, Kansas, under commitment dated October 9, 1942. The return also shows that under date May 10, 1943, he was transferred from the penitentiary to the Medical Center for Federal Prisoners, at Springfield, Missouri, because of his insanity. The lower court, in its decision, recites that "The evidence discloses that there had been prior adjudication of insanity." This must mean that there was an adjudication of insanity prior to the date of petitioner's trial and conviction, and this is conclusively shown by the record. A commitment signed by the Judge of the District Court of the Parish of West Feliciana, Louisiana, and addressed to the sheriff of that parish, and to the superintendent of the East Louisiana State Hospital, under date August 13, 1941, recites that: "Whereas, I, H. H. Kilbourne, Judge of the said Parish of West Feliciana L., and two physicians, constituting a Commission of Inquiry et cetera, into the sanity of said Roy

O. Ashley,[1] have this day adjudged the said Roy O. Ashley to be insane and a suitable subject for a hospital for the care and treatment of insane persons, etc." The commitment directed the sheriff to deliver Roy O. Ashley to the Superintendent of the East Louisiana State Hospital, at Jackson, Louisiana, and this was done. The record also shows that on the 5th of June, 1941, he was rated incompetent by the Veterans Administration. It also shows that on the 8th of October, 1942, Mrs. Anna May Ashley, wife of petitioner, was appointed curator for petitioner and at that time he was in the Federal prison, awaiting trial. It also appears that petitioner was indicted October 7, 1940; that date for arraignment was fixed as April 7, 1942; that on application of the United States attorney, the court issued a writ of habeas corpus ad prosequendum, directing the Superintendent of the East Louisiana State Hospital to deliver Roy Ashley to the United States marshal, to be by him transported to Monroe, Louisiana, for "disposition of the charges against him," the prisoner to be returned immediately after the disposition of the charges against him. The marshal was commanded to receive Ashley from the superintendent and to have him before the United States District Court at Monroe, Louisiana. The marshal's return shows that the writ was executed by transporting Ashley from the State Hospital to Monroe, where he was committed to the parish jail on April 6, 1942. It appears that on April 7, 1942, he was arraigned on the charges of using the mails to defraud and pleaded not guilty. On the same date, but apparently after he had been arraigned and entered his plea, an attorney was appointed to represent him "in the trial of the case." The appointed attorney filed a written plea of insanity, alleging that Ashley was insane at the time and times of the alleged offenses. There seems to have been no suggestion that he was insane at the time of the trial. It also appears from the record that a jury was impanelled and the trial was regularly proceeded with, testimony being produced on behalf of the government; and "at 1:50 p. m. (the day of trial) the defendant, through his counsel, announced that he desired to withdraw his former plea of not guilty, and enter a plea of guilty as charged, which the court permitted." The case came on for hearing October 8, 1942. The judgment of sentence, entered October 9, 1942, recites that defendant "having been found guilty of said offenses, is hereby committed to the custody of the Attorney General for imprisonment in an institution of the penitentiary type, etc." There is no further evidence in this record touching the question of petitioner's sanity at the time of his trial.

The presumption of sanity is a rebuttable presumption. The adjudication of insanity by the District Court of Louisiana and the subsequent order of that court appointing a curator for petitioner, rebutted the presumption of his sanity, and these proceedings constituted at least prima facie evidence of incompetence. It is observed that the court entered an order appointing a curator on the very day on which petitioner was being tried. This was a reaffirmance or readjudication of his incompetence or insanity. If we treat these proceedings as constituting only prima facie proof of incompetence or insanity, they at least destroyed the presumption of sanity. There is no evidence that the adjudication had by any direct proceeding been vacated or set aside, nor the guardianship terminated; neither is there any evidence in the record tending to impeach these proceedings collaterally. As said by the Supreme Court in Chaloner v. Sherman, 242 U.S. 455, 37 S.Ct. 136, 138, 61 L.Ed. 427, referring to an order appointing a guardian or curator for an incompetent person: "If it be true that the orders ought to be set set aside, either because they were, as alleged, entered corruptly, irregularly, or inadvertently (see United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93; Hilton v. Guyot, 159 U.S. 113, 207, 16 S.Ct. 139, 40 L.Ed. 95, 123), or because, owing to a change in plaintiff's condition, a committee is no longer required, the remedy must be sought by a direct proceeding to that end ([In] re Curtiss, 137 App.Div. 584, 122 N.Y.S. 468; [Id.], 199 N.Y. 36, 92 N.E. 396)."

We need not hold that the adjudication of insanity could be attacked only by a direct proceeding, but at least it constituted prima facie evidence of incompetence and there is no evidence in this record overcoming the presumption of insanity arising therefrom. In these circumstances we can

---

[1] Petitioner is variously named in the record as Roy O. Ashley, Roy J. Ashley and James R. Ashley. In the indictment he is named "James R. Ashley, alias Roy J. Ashley, alias J. R. Ashley."

not escape the conclusion that the trial and conviction of petitioner was absolutely void and that he is entitled to his discharge. The order appealed from is therefore reversed and the proceeding remanded with directions to enter an order discharging petitioner from the custody of respondent and directing the clerk of the trial court to give notice of the effective date of such order to the United States District Attorney for the Western District of Louisiana, the Superintendent of the East Louisiana State Hospital, at Jackson, Louisiana, and to Anna May Ashley curator for petitioner, of Tallulah, Louisiana.