**EVANS v. UNITED STATES.**

No. 1119.

Municipal Court of Appeals for the
District of Columbia.

Argued Oct. 8, 1951.

Decided Oct. 23, 1951.

Saul G. Lichtenberg, Washington, D. C. (Myer Pumps, Washington, D. C., on the brief), for appellant.

Arthur D. Schaffer, Asst. U. S. Atty., Washington, D. C. (George Morris Fay, U. S. Atty., and Joseph M. Howard, Asst. U. S. Atty., Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

The question here presented is whether a defendant in a criminal case during a proceeding before trial to determine his present mental condition must or should be assigned counsel in spite of his ostensible waiver of that right or privilege.

Appellant was arrested and charged by the United States attorney with assault.[1] Before plea the judge of the United States branch of the criminal division of the Municipal Court at the request of an assistant United States attorney committed appellant to Gallinger Municipal Hospital for a mental examination. The examination and subsequent proceedings were conducted under Code 1940, Supp. VII, § 24–301, as amended July 2, 1945, which is set out in full in the margin.[2] Following the commitment to Gallinger Hospital for examination two psychiatrists of that hospital filed with the court affidavits, each giving the opinion that appellant was then of unsound mind, suffering from para-

---

1. Code 1940, § 22–504: "Whoever unlawfully assaults, or threatens another in a menacing manner, shall be fined not more than five hundred dollars or be imprisoned not more than twelve months, or both."

2. Code 1940 Supp. VII, § 24–301: "When any person tried upon an indictment or information for an offense or tried in the juvenile court of the District of Columbia for an offense, is acquitted on the sole ground that he was insane at the time of its commission, that fact shall be set forth by the jury in their verdict; and whenever a person is indicted or is charged by an information for an offense, or is charged in the juvenile court of the District of Columbia with an offense, and before trial or after a verdict of guilty, it shall appear to the court, from prima facie evidence submitted to the court or from the evidence adduced at the trial, that the accused is then of unsound mind, the court may order the accused committed to the Gallinger Municipal Hospital for a period not exceeding thirty days, which period may be extended by the court for good cause shown, for examination and observation by the psychiatric staff of said hospital. If, after examination and observation, the said psychiatric staff shall report that in their opinion the accused is insane, the court may cause a jury to be impaneled from the jurors then in attendance on the court or, if the regular jurors have been discharged, may cause a sufficient number of jurors to be drawn to inquire into the sanity of the accused, and said inquiry shall be conducted in the presence and under the direction of the court. If the jury shall find the accused to be then insane, or if an accused person shall be acquitted by the jury solely on the ground of insanity, the court may certify the fact to the Federal Security Administrator, who may order

noid state, and advising that he be committed to St. Elizabeth's Hospital. Thereupon, a prima facie showing that appellant was of unsound mind having been made in accordance with the statute, the trial judge set a lunacy inquisition for a date about a week in the future. On the date of the inquisition appellant, in person, requested a further continuance and asked that the court communicate with a New York attorney so that he might be adequately represented at the lunacy inquisition. The continuance was granted, but on the continued date appellant was told that the court had communicated with the New York attorney, who had advised that he was not licensed to practice in the District of Columbia and did not wish to represent appellant. Appellant was asked on several occasions whether he wanted the court to assign counsel for him, but he waived the right to be represented by counsel. The court proceeded to impanel a jury, evidence was adduced, and the jury returned a verdict that appellant was of unsound mind as of the date of the inquisition. Thereafter he was duly transferred to St. Elizabeth's Hospital. Within the time allowed by our rules, he filed a notice of appeal through the United States attorney and wrote us requesting that we appoint an attorney for him. The attorney whom we appointed has prosecuted this appeal.

Two grounds of error are assigned: first, that the trial court should not have permitted the lunacy inquisition to proceed without appellant being represented by counsel; and, second, that a person as to whom a prima facie showing of being of unsound mind has been made is incapable of waiving his right to counsel.

We begin with the premise that if the proceeding below was a criminal prosecution, as urged by appellant, then the Sixth Amendment to the Federal Constitution applies. That amendment, applicable in all United States courts (though not in the states), provides in part: "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."

The Supreme Court has said: "It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."[3]

It has been reiterated on many occasions that in a criminal prosecution in the federal courts, while the right to counsel under the Sixth Amendment may be waived, such waiver must be made "intelligently," "understandingly," "competently," or "knowingly."[4] That there are different degrees or phases of insanity seems clear, even to a layman. Here the psychiatrists who made the preliminary reports on appellant certified that he was of unsound mind suffering from "paranoid state." While the medical books contain numerous and sometimes conflicting definitions of this term, one of the commonest is that it is characterized by the development of ambitions or suspicions into systema-

---

such person to be confined in the hospital for the insane, and said person and his estate shall be charged with the expense of his support in the said hospital. The person whose sanity is in question shall be entitled to his bill of exceptions and an appeal as in other cases."

3. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461.

4. Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309; Williams v.

Huff, 79 U.S.App.D.C. 31, 142 F.2d 91; Wood v. United States, 75 U.S.App.D.C. 274, 128 F.2d 265; Evans v. Rives, 75 U.S.App.D.C. 242, 126 F.2d 633 (a case originating in the Juvenile Court of the District of Columbia on a non-support charge); Neufield v. United States, 73 App.D.C. 174, 118 F.2d 375; Johnson v. United States, 71 App.D.C. 400, 110 F.2d 562; Willis v. Hunter, 10 Cir., 166 F.2d 721; Snell v. United States, 10 Cir., 174 F.2d 580.

tized delusions of persecution and grandeur which are built up in a logical form.[5] It would seem logically to follow that such delusions of grandeur might lead a person to believe erroneously that he was entirely capable of defending himself in court. Having these principles to guide us, we have no serious doubt that a person against whom a prima facie showing has been made of having an unsound mind of paranoid state could not properly be held to have waived counsel intelligently, understandingly, competently, or knowingly. If a person is insane at the time of the trial of a criminal case, he can not legally waive counsel for the reason that he is incapable of making a proper defense.[6]

But, urges the United States, insanity is not a crime.[7] An insanity inquisition, therefore, is not a criminal prosecution, and hence the Sixth Amendment, together with cases construing it, does not apply. In consequence, it is argued, only the due process clause of the Fifth Amendment is applicable, and under that amendment the presence of counsel is not necessarily a part of due process, and hence the trial judge in the present case was entitled to observe the demeanor of appellant and exercised proper judicial discretion in accepting his waiver of counsel.

■ There are three stages in which the insanity of a person accused of crime may be raised: first, before arraignment and trial; second, during trial where the question usually is whether the accused was insane at the time of the commission of the crime and is not guilty by reason of insanity; and, third, after trial, conviction and sentence, where the question usu-

ally is, in capital cases, whether since trial the accused has become so insane that he should not be executed. We are dealing here with the first of these classifications.

■ The purpose of the applicable portion of the statute was to determine whether appellant was then capable of understanding the nature and object of the proceedings so as to properly conduct his defense at a trial of the charge against him. The verdict of insanity given as a result of the inquisition spoke as of that date and was a legal determination that appellant was not then mentally qualified to stand trial. The sole effect of these sections is, in a proper case, to suspend the criminal proceedings during the period of insanity. "The jurisdiction of the court continues and when sanity is restored the case may proceed as if the interregnum had not occurred."[8]

■ We agree that a lunacy inquisition, held before trial to determine if the accused is capable of going to trial, is not, strictly speaking, a criminal proceeding and hence does not fall within the ambit of the Sixth Amendment. We recognize also that the prevailing view is that due process under the Fifth or Fourteenth Amendments does not necessarily demand the appointment of counsel. It has been so held in criminal proceedings in states to which the Sixth Amendment does not apply but when the due process clause of the Fourteenth Amendment has been invoked.[9] Furthermore, in mental inquisitions not connected with criminal proceedings, the appointment of counsel to represent the alleged insane person is discretionary with the trial judge.[10] The requirements of due process in such case is satisfied if notice is given

5. The American Illustrated Medical Dictionary, (21st ed.), Dorland, p. 1064; 2 Gray's Attorneys' Textbook of Medicine, (3d ed.), § 104.01 et seq.

6. Forthoffer v. Swope, 9 Cir., 103 F.2d 707.

7. Barry v. Hall, 68 App.D.C. 350, 98 F.2d 222.

8. Haislip v. United States, 76 U.S.App.D. C. 91, 92, 129 F.2d 53, 54; cf. Forthoffer v. Swope, 9 Cir., 103 F.2d 707.

9. Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595. Cf. Holtzoff, "The Right of Counsel Under the Sixth Amendment," N.Y.U.L.Q.Rev., June 1944.

10. Code 1940, § 21–308: " * * * The court may in its discretion appoint an attorney or guardian ad litem to represent the alleged insane person at any hearing before the commission or before the court, or before the court and jury * * *."

and opportunity is afforded to be present and defend.[11]

In Rivers v. Munson, 74 App.D.C. 177, 125 F.2d 393, a proceeding to determine the mental condition of a retired captain in the Army (not in connection with a criminal charge), the alleged insane person was represented by counsel, he objected to that particular counsel, and asked for the appointment of another specified attorney. The trial court refused to grant his request. It was held that the request for discharge of one counsel and the appointment of another was a matter within the discretion of the trial court and that such discretion had not been abused.[12] Nevertheless, the person involved did have the services of counsel, even though not one of his own choice.

 But the procedure which governs in the case of a person charged with a criminal offense as was appellant in the instant case is different from that governing the ordinary lunacy inquisition.[13] And though due process does not absolutely require the appointment of counsel in all cases where a person is deprived of his liberty because of unsound mind, we reach the conclusion that in a case like the present due process requires that defendant be represented by counsel. The proceedings here involved may be termed semicriminal in nature. Looking at the substance rather than the form, it was a step in the criminal proceedings against the appellant. He was under arrest. The government was represented by an assistant United States attorney. While the purpose of the proceeding was humane and was for protection of the prisoner's rights, not merely his legal status but his future liberty was at stake. The criminal charges against him were merely held in abeyance. Unlike the ordinary lunacy inquisition, this statute requires a prima facie showing to the trial judge before the proceedings were even begun that appellant was of unsound mind.[14] In the face of such a showing we believe the so-called waiver of the services of counsel was totally ineffective.

Reversed.

Code 1940, § 21–311: " * * * The court may in its discretion appoint an attorney or guardian ad litem to represent the alleged insane person at any hearing before the court, or before the court and jury * * *."

11. Simon v. Craft, 182 U.S. 427, 21 S.Ct. 836, 45 L.Ed. 1165; In re Moynihan, 332 Mo. 1022, 62 S.W.2d 410, 91 A.L.R. 74.

12. Cf. Chaloner v. Sherman, 242 U.S. 455, 37 S.Ct. 136, 61 L.Ed. 427.

13. Haislip v. United States, supra.

14. Cf. Hager v. Pacific Mutual Life Ins. Co., D.C.E.D.Ky., 43 F.Supp. 22.