**MASSEY v. MOORE, Warden.**

No. 14319.

United States Court of Appeals Fifth Circuit.

June 26, 1953.

Rehearing Denied Sept. 10, 1953.

O'Neal Massey, in pro. per.

Willis E. Gresham, Asst. Atty. Gen. of Texas, Price Daniel, Atty. Gen. of Texas, and J. Fred Jones, Asst. Atty. Gen., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

HUTCHESON, Chief Judge.

The petitioner having suffered two previous convictions for other felonies, is serving a compulsory life sentence in the Texas State Penitentiary on a judgment of con-

viction for the offense of robbery by assault.

Convicted on March 11, 1941, he did not appeal. Beginning, however, in March, 1943, he has made persistent and repeated applications in many courts, both state and federal.[1]

When the present petition for *habeas corpus* was presented to him, the district judge, in a memorandum and order reviewing his first proceeding in the federal court, 5 Cir., 173 F.2d 980, and the further proceedings taken thereafter by him, stated: "The present petition must, I think, be regarded as a new proceeding but one in which I should consider only one question and that is the question of Massey's not having had counsel at his trial, and that action on this petition should be deferred until the State of Texas and the petitioner shall have filed copies of proceedings, decisions, etc. with respect to his recent petition to the State Court for relief."

Thereafter, the proceedings in the state court having been completed and copies of the documents, etc. upon which petitioner and the state stand in this proceeding having been filed in the federal court, the district judge, confining his determination to the one question whether the trial of petitioner without counsel was a violation of due process, went on to say:

"On this question of whether, since he was not represented by counsel at his trial, he is in custody in violation of the Constitution, etc. of the United States, I have examined again all the proceedings in this court and in the state courts and have reached the conclusion that his contention that his trial was not in accordance with the Constitution is without merit. Before applying to this court, he applied to the State Court, and this identical question was passed upon by the Court of Criminal Appeals of Texas on May 28, 1952 (see 249 S.W.2d 599). I believe that

---

1. Ex parte Massey, 149 Tex.Cr.R. 172, 191 S.W.2d 877; In the Matter of Massey, 327 U.S. 770, 66 S.Ct. 954, 90 L. Ed. 1000; Massey v. Texas, 329 U.S. 674, 67 S.Ct. 109, 91 L.Ed. 595; In re Massey, rehearing denied 329 U.S. 823, 67 S.Ct. 107, 91 L.Ed. 700; Massey v. Moore, 5 Cir., 173 F.2d 980, certiorari denied 338 U.S. 837, 70 S.Ct. 46, 94 L. Ed. 511; Ex parte Massey, Tex.Cr. App., 249 S.W.2d 599.

court reached the right conclusion under the law with respect to petitioner's claim. Apparently no attempt has been made to carry his case to the Supreme Court of the United States."

Petitioner thereafter moving for a certificate of probable cause and to be allowed to appeal as a poor person, the district judge, upon the basis of the views thus expressed, while allowing petitioner to appeal under Sec. 1915, Title 28 of the Code, declined to issue a certificate of probable cause.

Petitioner appealing from the order denying him the relief applied for, having lodged the record here, the appellee moved to dismiss the appeal because of the absence of a certificate of probable cause as required by Section 2253, Title 28 U.S.C. and of the fact that the State Court of Criminal Appeals has adjudicated appellant's contention adversely to him, and appellant has failed to apply to the Supreme Court of the United States for certiorari.

Countering this motion and in addition addressing himself to the merits of his appeal, appellant is here insisting that the order was erroneously entered and that it must be reversed with directions to allow the writ and order his discharge, and Judge Rives of this court having issued a certificate of probable cause, we deny the motion to dismiss the appeal, and pass to a consideration of its merits.

A careful examination of appellant's contentions in the light of the whole record, including that made on the former appeal to this court, and of the opinions of the Court of Criminal Appeals of the State of Texas, convinces us that the district judge was right in holding that petitioner was not entitled to the writ and in denying his application for it. This is so for the reasons given by the trial judge in the opinions written by him, by this court in 173 F.2d 980, supra, and by the Court of Criminal Appeals in Ex parte Massey, Tex. Cr.App., 249 S.W.2d 599.

It is quite plain that appellant's stand here is upon his insistence that a defendant, though he has not been adjudged insane, may stand trial without pleading or otherwise making a showing that he was of unsound mind and, thereafter, on the ground that he was of unsound mind at the time of the trial, may by *habeas corpus* collaterally attack and obtain release from custody under the judgment.

The holding of the Texas Court of Criminal Appeals that a final judgment of conviction cannot be collaterally attacked by *habeas corpus* on a contention of the insanity of the petitioner at the time of his trial is in accord with decisions of other states [2] and of the federal courts.

The law standing thus in respect of petitioner's right to collaterally attack the judgment of conviction by raising the question of insanity at the time of trial, and the Sixth Amendment requiring the appointment of counsel not being applicable in state court proceedings, appellant may not by this collateral attack upon the judgment obtain release from custody under it merely by joining with his claim that he had no counsel the claim that he was at the time of trial of unsound mind.

Further, on his former application for relief by *habeas corpus*, the district judge, upon a hearing of the issue whether he was or was not insane at the time he was tried and was, therefore, entitled to relief, determined it against him and denied his petition, and we affirmed, 173 F.2d 980. The issue of his unsoundness of mind, which appellant's petition now tenders as a part of his claim that he should

**2.** State ex rel. Novak v. Utecht, 203 Minn. 448, 281 N.W. 775; Mitchell v. State, 179 Miss. 814, 176 So. 743, 121 A.L.R. 258; Lee v. State, 35 Ala.App. 38, 44 So.2d 606, 607; Ex parte Lee, 248 Ala. 246, 27 So.2d 147; 14 Am.Jur., Criminal Law, Sec. 46; 25 Am.Jur., Habeas Corpus, Sec. 85, Note 12; Annotations on "Remedy and one convicted of crime while insane." 10 A.L.R. 213 and 121 A.L.R. 267, 270;

Whelchel v. McDonald, 5 Cir., 176 F.2d 260; Dodd v. United States, 10 Cir., 196 F.2d 190.

But the rule is otherwise in the Federal Court if the applicant has been adjudged insane. Ashley v. Pescor, 8 Cir., 147 F.2d 318, 320; Hahn v. United States, 10 Cir., 178 F.2d 11; Hallowell v. Hunter, 10 Cir., 186 F.2d 873.

have been afforded counsel at his trial, is not available to him as an independent ground for release in this case. Nor does appellant stand any better on his contention that, though the claim of insanity at the time of trial, being a collateral attack on the judgment, is not an independent ground for release, it is relevant and material upon the issue he now tenders that he did not intelligently waive counsel.

■ In the first place, there is not, there never was, any basis in this case for such an issue since, under Texas law in a case less than capital, it is not necessary for counsel to be appointed for him unless the issue of his insanity is raised before trial and has to be tried.

The real question presented here is not whether petitioner intelligently waived counsel because in a state court in Texas such waiver is not required, but whether, under the undisputed facts, the trial was so unfairly conducted as to amount to a denial of due process.

Appellant does not point to any fact or thing showing that he had a defense and that he was unfairly deprived of it, or that he was otherwise not fairly tried, or even that there was any unfairness in the attitude of prosecutor or court. He rests his whole case upon the proposition raised long after his trial that because, as he now claims, he was then of unsound mind, he could not be tried without counsel.

■ If his position that he was of unsound mind, in the sense of being insane, is correct, and he had presented it or it had been otherwise timely raised, before or during the trial, he could not have been tried with or without counsel until under the Texas statutes the question of his sanity had been first determined, and he is now barred from collaterally raising an issue which he should have raised on the trial. He is thus in effect endeavoring to retry his case on an issue which should have been raised before or during trial, and it is fundamental that the writ of *habeas corpus* cannot be made to serve this purpose.

■ As the Court of Criminal Appeals pointed out on the appeal to that court, 249 S.W.2d 599, supra, there was nothing in connection with the trial to show unfairness in attitude or action on the part of the state or of the court. On the contrary, the record shows that defendant was offered an opportunity to plead guilty and take a sentence of five years but that he refused to do so and insisted upon the case going to trial. The record shows, too, that the defendant did not, either by his own testimony or by that of any other witness deny the crime of which he was charged, and that in the writ of *habeas corpus*, filed in the state court and there denied, with writ of certiorari to the Supreme Court refused, he did not make the ground of his complaint and application either that he was not furnished with counsel or that he was of unsound mind.

■ It is settled law that the Sixth Amendment does not apply in state court proceedings and that a state law providing that it shall not be necessary to assign counsel in cases short of capital is not in violation of the Fourteenth Amendment or of any other conception of due process.

■ It is further established that while in particular cases the Supreme Court has asserted the right to determine on the undisputed facts whether or not a state trial has violated the due process clause of the Fourteenth Amendment, the fact that, unless the violation of the federal constitution is clear and plain, the action of the federal court would be an interference with state court proceedings, makes it imperative that something in the proceedings be pointed to as a denial of that process.[3]

Upon the facts of this case, as this record presents them, including therein, of

3. Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595; Uveges v. Pennsylvania, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127; Gibbs v. Burke, 337 U.S. 773, 69 S.Ct. 1247, 93 L.Ed. 1686; Gallegos v. Nebraska, 342 U.S. 55, 72 S.Ct. 141, 96 L.Ed. 86; Palmer v. Ashe, 342 U.S. 134, 72 S.Ct. 191, 96 L.Ed. 154; Commonwealth ex rel. Uhler v. Burke, 172 Pa. Super. 108, 91 A.2d 913, at page 915; and Johnson v. State, Tex.Cr.App., 251 S.W.2d 739.

course, the verdict of the jury and the judgment of the court, it appears: that petitioner is guilty of the offense of which he was charged, and, having been found guilty, became automatically subject to a sentence of imprisonment for life; that he was put to trial and tried, not oppressively or vindictively, and not until after he had been offered an opportunity to plead guilty and take a five year sentence; that he refused to do this and insisted on going to trial on his plea of not guilty; and that, as the legal and peremptory result of his conviction he was given the sentence which the statute compels.[4]

Upon this record, appellant may not attack the life sentence again, this time on the ground that he was mentally incompetent to stand trial. Under the procedure prevailing here and generally elsewhere, this is a collateral attack upon the judgment. If allowed, it would in effect permit a retrial in every criminal case of issues, which had been settled by the trial and judgment, not on the ground that anything was done by the state or the court which prevented appellant from making his defense, but on the wholly untenable, because collateral, attack upon the judgment, that he was of unsound mind at the trial and it was contrary to due process to put him to trial if he was in that state of mind without according him counsel.

In a long series of cases, beginning with Parsons v. State, 153 Tex.Cr.R. 157, 218 S.W.2d 202, and ending in Johnson v. State, Tex.Cr.App., 251 S.W.2d 739, including therein the opinion in the Massey case, 249 S.W.2d 599, supra, the Court of Criminal Appeals has dealt with the general question involved here, the effect upon a conviction in a less than capital case of the failure of the defendant to have the assistance of counsel. With an earnest purpose to apply the law as the Supreme Court of the United States has from time to time declared it, that court, canvassing the facts in each of the cases dealt with and hewing to the established line, that

the appointment of counsel in a criminal case in the state court is not a legal right, and that each case must stand on its own facts and must be determined by a showing of whether or not due process has been violated, has deliberately, carefully, and, we think, correctly adjudicated each case, including Massey's that has come before it.

Giving the fullest effect to petitioner's claims of a denial of due process, all that can be made out of them is that he should have had counsel. He did not request the appointment of counsel. He did not complain because counsel was not appointed. He does not now show that anything was done to him unfairly or unjustly, which, if he had had counsel he could have been protected from. He does not even claim or make any showing, if he does claim, that if he had had counsel, he would have acted differently, in respect to accepting the offer to take a plea of a five year sentence, than he did act without counsel. But if it be assumed that he is in effect complaining that if he had had the assistance of counsel, he would have been advised by counsel to plead guilty and take a five year sentence rather than run a chance of a third conviction with life imprisonment, and would have taken the advice, this would not avail him. For if unless it is to be held in every case where hindsight shows that the course taken by defendant was not the wise one, that the failure to have the assistance of counsel converts what would otherwise be an error of judgment into a denial of due process, no violation of due process is presented here.

We are in no doubt that but for the fact that in this case the defendant was a third offender and that, looking with hindsight at the result of his action in not accepting a plea, he would have been better advised to accept it, there would be no possible basis for a claim that anything occurred in the trial which constituted a violation of due process. We cannot agree that this fact furnishes the basis for a finding that he was denied due process.

4. Art. 63, Vernon's Penal Code of the State of Texas; Haro v. State, 132 Tex. Cr.R. 507, 105 S.W.2d 1093; Ex parte

Massey, 149 Tex.Cr.R. 172, 191 S.W.2d 877, writ of certiorari denied, 329 U.S. 674, 67 S.Ct. 109, 91 L.Ed. 595.

On the contrary, we agree with the opinion of the Court of Criminal Appeals of Texas that it did not.

The judgment was right. It is affirmed.

RIVES, Circuit Judge (dissenting).

Whatever might have been the effect of any one circumstance standing alone, it seems to me that, when the fact that petitioner was not offered counsel for his defense·is coupled with the fact that he was probably insane at the time of trial, and with the further fact that his mental incapacity, if not brought to the attention of the state court, was known to the state penitentiary officials who removed him from the prison psychopathic ward and delivered him for trial, the conclusion is inescapable that the petitioner has been denied due process of law.

While the district judge decided that petitioner's contention was without merit, he expressed some doubt also as to whether the failure to seek review of the last State court decision in the Supreme Court of the United States prevented the district court from granting the writ. That question, it seems to me, should receive first consideration.

The application to the federal ·district court for *habeas corpus* in behalf of a State prisoner should be denied unless it is made to appear (1) that all State remedies, including a denial of review of the federal questions involved by the Supreme Court of the United States, had been exhausted; or (2) that there was no adequate and effective remedy available in the State courts. 28 U.S.C.A. 2254; Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761; Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 437; Bacom v. Sullivan, 5 Cir., 181 F.2d 177; same case, 5 Cir., 194 F.2d 166. Repetitious applications to state courts are not required. Brown v. Allen, supra; Bacom v. Sullivan, supra.

As to prerequisite (1), supra, it does appear that one petition for *habeas corpus* filed in the District Court of Walker County, Texas, at its May term, 1945, has been prosecuted through the Court of Criminal Appeals of Texas, 149 Tex.Cr.R. 172, 191 S.W.2d 877, with review denied by the Supreme Court of the United States, 329 U.S. 674, 67 S.Ct. 109, 91 L.Ed. 595. The principal grounds for that petition, however, were that the jury failed to assess a penalty in the verdict finding petitioner guilty, and that the sentence entered on the court record was confinement in the State Penitentiary "for a term of —— years". After a hearing, the State court entered judgment *nunc pro tunc* providing that petitioner be punished by confinement in the State Penitentiary for life. That application itself did not raise the question of petitioner's lack of counsel, but in seeking to disqualify the Judge of the District Court of San Jacinto County from hearing the application, petitioner used this language:

"That (at) the time of the trial of cause No. 5070, styled THE STATE OF TEXAS VS. O'NEAL MASSEY, by the 9th Judicial District Court of San Jacinto ,County, Texas, the relator was confined to the Texas State Penitentiary Psychopathic Ward, Huntsville, State Prison, as an insane patient.

"That relator was released from said insane ward, to the San Jacinto County Officials to stand trial in said cause.

"That when said cause was called for trial on March 11th, a.d. 1941, the judge of said court was properly informed that the relator was being placed on trial in said cause in an insane state of mind, without benefit of counsel.

"That through prejudice of the presiding judge, Honorable W. B. Browder, the trial was ordered to proceed without recognizing the insane condition of the relator, and through prejudice, said Judge Honorable W. B. Browder refused to appoint counsel for relator, therefore depriving the relator of his constitutional rights."

The Supreme Court denied review on October 21, 1946, 329 U.S. 674, 67 S.Ct. 109, 91 L.Ed. 595. On December 4, 1946, the Court of Criminal Appeals of Texas considered another petition for *habeas corpus* in which it was alleged,

"that at his first trial on March 11, 1941, and also on the hearing on July 26, 1945, at which time the second judgment and sentence was rendered against him, the relator was unable to defend himself and that said court deprived him of the aid and assistance of counsel for defense, in violation of the due process of the law clause of the 14th Amendment of said Constitution. That he did not by word or action at either trial waive the assistance of counsel for his defense."

In denying that petition, the Court of Criminal Appeals, through its Presiding Judge, entered the following order:

"Application for writ of habeas corpus is refused. The same matters here presented were passed upon by this court in Ex parte Massey, No. 23,212, reported in [149 Tex.Cr.R. 172] S.W. 2d. series, at page 877, Vol. 191, this Decr. 4, 1946."

The Texas Court of Criminal Appeals has thus construed its former decision as having passed upon the petitioner's claim that the denial of counsel deprived him of due process. If so, then petitioner has exhausted his state remedies.

Since that is debatable, however, let us consider the alternative prerequisite (2), that is, whether petitioner had an adequate and effective remedy available in the State courts. Beginning in March, 1943, there have been persistent and repeated applications by appellant in many courts, both state and federal. Among the reported decisions are: Ex parte Massey, 149 Tex. Cr.R. 172, 191 S.W.2d 877; Massey v. Texas, 329 U.S. 674, 67 S.Ct. 109, 91 L. Ed. 595; Massey v. Moore, 5 Cir., 173 F.2d 980, certiorari denied, 338 U.S. 837, 70 S.Ct. 46, 94 L.Ed. 511; In the Matter of Massey, 327 U.S. 770, 66 S.Ct. 954, 90 L.Ed. 1000, motion for leave to file petition for rehearing denied, 329 U.S. 823, 67 S.Ct. 107, 91 L.Ed. 700; Ex parte Massey, Tex. Cr.App., 249 S.W.2d 599. In most of these applications, the petitioner has sought a hearing on his claim that he was mentally incapable of defending himself and that to try him without counsel amounted to a denial of due process of law. To this date,

he has never been able to obtain a hearing in which *both* his trial without counsel and his alleged mental incapacity were considered.

The judgment of this Court in 173 F.2d 980 was based upon the assumption that petitioner had been represented by counsel at his trial, because the records of the court in which he was convicted recited that petitioner "appeared in person in open court, his counsel also being present". It is now shown by the certificate of the trial judge (28 U.S.C.A. § 2245) and also by the certificate of the prosecuting attorney that the record of the judgment is not correct, and that petitioner was not represented by counsel at his trial. Affidavits of the judge presiding and the district attorney prosecuting at the trial are quoted in full in the opinion of the Court of Criminal Appeals of Texas in 249 S.W.2d at pages 599 and 600.

In his very first petition for *habeas corpus*, a petition presented to the Judge of the District Court of Montgomery County, Texas, on or about March 22, 1943, complaining of his conviction on March 11, 1941 in San Jacinto County, the petitioner made the following allegations:

"Relator would further show your Honor that the District Court of San Jacinto County, Texas, was without jurisdiction of the offense charged in the indictment; that the venue was not properly laid for the reason that the offense, if any, did not occur in San Jacinto County. Relator would further show your Honor that the relator was without counsel at the time of his trial and was insane; that he was ignorant of his legal rights and interposed no defense whatever, as the record reflects, and that the defendant is still insane."

The Texas Court held,

"that relator's application for writ of habeas corpus should be dismissed for the reasons, to-wit: That the judgment and sentence of the 9th District Court of San Jacinto County, Texas, in cause Number 5070, styled State of Texas v. O'Neal Massey, has become final, and the defendant not having

raised the questions of venue or of insanity, as matters of defense, upon the trial of said cause, he has therefore waived the same, and said judgment and sentence is final against him, the said O'Neal Massey.

"That on the question of sanity of the defendant, O'Neal Massey, after conviction, this proceeding is not properly brought according to law. in such cases."

Evidently that same view was entertained by the Court of Criminal Appeals of Texas in its last consideration of the case, Ex parte Massey, 249 S.W.2d 599. That Court then had before it considerable evidence as to the petitioner's alleged insanity certified by the judge of the District Court of Walker County, Texas, under the provisions of Art. 119, C.C.P., as amended, Vernon's Ann.C.C.P. Art. 119, but the Court of Criminal Appeals failed to discuss any of such evidence and apparently declined to consider it, stating:

"In the recent case of Ex parte McCune, Tex.Cr.App., 246 S.W.2d 171, we had occasion to adhere to our prior holdings that the common-law writ of coram nobis has no application in this state and that the right to re-open and re-examine a prior final conviction does not exist in this state. This rule is here applicable as to relator's contention that he was insane at the time of trial." 249 S.W.2d 601.

In earlier parts of its opinion that Court had noted,

" 'that the necessity for furnishing counsel to an accused upon trial for a crime less than capital depends, in a State court, upon the facts in each case, in the determination of which there must be taken into consideration the gravity of the crime, the age and education of the accused, the conduct of the court or prosecuting officials, and the complicated nature of the offense charged, and the possible defense thereto.' " 249 S.W.2d 601.

It may be significant that while the Texas Court said that " 'the age and education of the accused' " should be taken into consideration, it made no mention of his alleged mental incapacity due to disease or insanity. Further, the Texas Court said:

"No stronger evidence of relator's ability to represent himself upon the trial of his case can be offered than his conduct and examination of the witnesses upon the instant trial." 249 S. W.2d 601.

"The instant trial" then being considered took place on April 4, 1952, more than eleven years after the petitioner had been tried and convicted on March 11, 1941. It is, therefore, clear that the Texas Court considered petitioner's mental capacity as being the same over this long period of years and declined to take note of the evidence of his alleged insanity at the time of his trial and conviction.

It is fair to conclude that petitioner had either exhausted his State remedies or that the State courts afforded no adequate and effective remedy for petitioner's claim that while mentally incapable of defending himself he was tried without counsel, or that both of such prerequisites to the application to the federal district court had been met.

Coming to a consideration of the merits of petitioner's contention, it may be noted that the nature of the evidence of petitioner's alleged insanity at the time of his trial is fairly reflected by the careful findings of fact of the United States District Judge on the hearing before him in June 1948:

"He claims that he was of unsound mind at the time of such San Jacinto County Trial. The testimony of Joe Byrd, who was some time before and some time after March 11, 1941, Assistant Warden of the Texas State Penitentiary and who is now Chief Transfer Agent of such Penitentiary, is most significant. Respondent not only did not attempt to show that Byrd's testimony was untrue, but did not cross examine him. The meager records produced from the psychopathic ward of the prison, where Petitioner was confined, tend to corroborate, rather than dispute, Byrd's testimony. It is clear that Petitioner was at times

of unsound mind and was confined in the psychopathic ward of the penitentiary. He was taken from such psychopathic ward, delivered to the Sheriff of San Jacinto County, and carried before the San Jacinto County Court, and on March 11, 1941, tried and sentenced as stated above. After such trial and sentence, while in the San Jacinto County jail, he mutilated himself by cutting his wrists, and was in that condition when returned to the penitentiary, and to the psychopathic ward.

"I find petitioner to have been at times and from time to time of unsound mind around March 11, 1941, the date of his trial in the District Court of San Jacinto County, and for several months previous thereto, and several months subsequent thereto. What his condition was on the day and at the time of the trial is not clear. I think he is now sane, but rather queer."

In the hearing certified to the Court of Criminal Appeals of Texas and which appears in the record before us, Joe Byrd further testified on his examination by the petitioner:

"Q. You testified at a Federal habeas corpus hearing in 1948, that about January, 1941, until sometime in August, I was more or less of unsound mind, however, you stated at times I appeared to be normal; Captain Byrd, I would like to ask you, to the best of your memory, at times when I appeared to be normal, do you believe I was fully normal?

"A. No, I don't. I didn't think you have very much sense.

"Q. Now, about March 7, 1941, the record shows, you and Mr. T. W. Arnold released me from the State Insane Ward to the Sheriff of San Jacinto County, Texas, is that correct?

"A. Now, let me think a minute. Me and Arnold went over there and got you out of the psychopathic ward, but I don't remember when it was, and turned you over to the law in San Jacinto County. I don't remember the date.

"Q. Do you recall whether or not you told these officers from San Jacinto County that I was being released to them from the insane ward?

"A. Oh, I don't remember about that. I might have and it seems like I did."

The Court of Criminal Appeals of Texas placed great emphasis on "the fact that the court, as well as the representative of the state, offered relator a term of five years in the penitentiary upon his plea of guilty". 249 S.W.2d at page 600. Every person accused of a felony has a right to a trial before a jury of his peers conducted according to due process of law. It seems to me incredibly wrong that, solely because he insisted on exercising that basic and blood-bought right, this petitioner has now been imprisoned for twelve instead of for five years, and must continue to suffer imprisonment for the rest of his life.

At the time of the robbery by assault for which the petitioner was convicted, he was an escaping convict. How many were involved in the escape does not appear, but at least two of the convicts committed this robbery. The record contained the following stipulation:

"AGREEMENT

"Dictated By Mr. Gresham:

"It is agreed by and between the Petitioner and the Respondent that one Jack Cade was also indicted by the Grand Jury of San Jacinto County, for the offense of Robbery by Assault upon the same facts and growing out of the same transaction for which this Petitioner was indicted. At the time Cade was indicted he had at least two prior felony convictions in this State. Cade was not indicted as an habitual offender. Upon his trial on or about March 10, 1941, in the District Court of San Jacinto County, Cade plead guilty to the offense of Robbery by Assault and upon the recommendation of the District Attorney, received the minimum

sentence of five years confinement in the penitentiary."

Assuming petitioner actually to be guilty, it yet remains true that if he had been represented by counsel and properly advised, he, like Cade, might have pleaded guilty, and, if so, his five year sentence would have expired seven years ago.

Assuming petitioner actually to be not guilty, he should not be penalized for refusing to plead guilty even in the face of such an attractive offer.

No record of the evidence taken at petitioner's original trial and conviction has been made available to us. It has been the petitioner's contention, as appears from previous petitions for *habeas corpus*,[1] and from his questions to the witnesses in the last hearing, that upon his trial he conducted no defense of himself and asked no questions, and, further, that there was no substantial evidence to connect him with the crime. Whether he claims now to be innocent does not appear. He did insist upon his trial on entering a plea of not guilty.

Petitioner's contention that, if he had been adequately represented by counsel, he might have been acquitted is corroborated to some extent by the testimony of the victim of the alleged assault to rob, Dr. M. E. Curtis:

"Q. Did you later on testify in the District Court of San Jacinto County, Texas, against the boys who took your automobile? A. Yes, I appeared in court.

"Q. Against the boy that they claimed took your car? A. I didn't recognize the men at all as I never saw them. I never could see them as they kept their faces out of my sight.

"Q. At the trial there then, did you identify me as one of the persons who took your car? A. No.

"Q. Did you ever, at the trial, state whether or not that actually happened to you in San Jacinto County? A. I

think I gave the same testimony that I have given here.

"Q. Do you recognize me as being one of the defendants at that trial, do you not? A. No, I don't. It has been so long and I didn't pay very much attention to the prisoners at all. I just went over there and gave my testimony and got up.

"Q. Do you recall whether or not you were cross examined? A. I don't think so.

"Q. The prisoner, whom they were trying, did he ask any questions at all? A. I don't think. I think probably the lawyers were the only ones to ask me any questions.

"Q. Just the District Attorney? A. Yes, I guess so.

"Q. Were you present when other witnesses testified in the same case? A. I don't know whether I was or not. As soon as I got through and as soon as I got excused I came on back to the Eastham farm."

The petitioner questioned the Sheriff of San Jacinto County:

"Q. Did you hear me cross examine any witnesses in that court? A. I don't recall. But I remember you represented yourself.

"Q. You don't remember me saying anything? A. I can't remember what you said. I just remember you represented yourself."

There was no further testimony as to whether petitioner cross examined any witnesses, offered any testimony, testified in his own behalf, or in any way conducted a rational defense of himself.

Upon the present record, it is obvious that the result would have been different, a five year sentence instead of life, if petitioner had pleaded guilty. Whether the result would have been different if petitioner had been represented by counsel on his

---

1. Including his first petition filed March 22, 1943, in which he alleged: "the relator was without counsel at the time of his trial and was insane; that he was ignorant of his legal rights and interposed no defense whatever, as the record reflects, and that the defendant is still insane."

trial, having pleaded not guilty, we cannot say. Other than the jury's verdict and the court's judgment, both attacked by the petition, there is no evidence in the present record to show that petitioner was guilty of the offense of which he was charged.

Considering the necessity of maintaining public order, Texas has held judgments of conviction to be final and conclusive, not subject to be reopened for trial of the issue of insanity at the time of trial. This acute form of the perpetual struggle between order and liberty has been decided by Texas in favor of order.

On the side of liberty, however, it is obvious that insanity may disable a person from making a rational defense. 14 Am. Jur., Criminal Law, Sec. 44. It seems inconsistent to hold that petitioner is foreclosed from raising his mental incapacity to defend himself, because he did not enter a proper plea of insanity. His very incapacity would have disabled him from so pleading. This apparent dilemma may be solved by the appointment of counsel, in cases where the State knows of the defendant's doubtful mentality. It is true that an insane man can have no contractual agent, but it is equally true that a person *non compos mentis,* or so suspected, may have an attorney appointed by law. Mitchell v. State, 179 Miss. 814, 176 So. 743, 121 A.L.R. 258, 262. It may be that appointment of counsel is not required in every case even of a grave criminal offense to foreclose the issue of insanity at the time of trial. When a crime other than a capital offense is involved, each case depends upon its own facts. Betts v. Brady, 316 U.S. 455, 462, 62 S.Ct. 1252, 86 L.Ed. 1595. Taking into consideration the peculiar circumstances in each case as to the gravity of the offense, its complicated nature, the possible defense thereto or mitigation thereof, the conduct of the court or prosecuting officials, the United States Supreme Court "decisions have been that where the ignorance, youth, *or other incapacity* of the defendant made a trial without counsel unfair, the defendant is deprived of his liberty contrary to the Fourteenth Amendment." (Emphasis supplied). Gibbs v. Burke, 337 U.S. 773, 780, 69 S.Ct. 1247, 1250, 93 L.Ed. 1686.

See also Rice v. Olson, 324 U.S. 786, 65 S. Ct. 989, 89 L.Ed. 1367; Bute v. Illinois, 333 U.S. 640, 677, 68 S.Ct. 763, 92 L.Ed. 986; Uveges v. Pennsylvania, 335 U.S. 437, 441, 69 S.Ct. 184, 93 L.Ed. 127; Gibbs v. Burke, supra; Quicksall v. Michigan, 339 U.S. 660, 666, 70 S.Ct. 910, 94 L.Ed. 1188; Palmer v. Ashe, 342 U.S. 134, 135, 72 S.Ct. 191, 192, 96 L.Ed. 154. As said in the last cited case:

"This Court has repeatedly held that the Due Process Clause of the Fourteenth Amendment requires states to afford defendants assistance of counsel in noncapital criminal cases when there are special circumstances showing that without a lawyer a defendant could not have an adequate and a fair defense."

Those decisions of the Supreme Court of the United States are binding alike upon the state courts and upon this court. Johnson v. State, Tex.Cr.App., 251 S.W.2d 739. It seems clear to me that insanity, just as any other incapacity of the defendant, may make a trial without counsel unfair and lacking in due process.

The special facts and circumstances of this case have already been sufficiently related. In gravity the offense ranked only one degree below a capital offense as is indicated by petitioner's sentence to life imprisonment. The offense was complicated by the Texas habitual criminal law which imposed the unusual risk of life imprisonment if found guilty by the jury's verdict, while a sentence of five years was offered for a plea of guilty. The victim of the robbery, though unable to identify his assailants, was not cross-examined on petitioner's trial, and the evidence is unsatisfactory as to whether the petitioner presented any rational defense. He failed to appeal and for several years failed to question the sufficiency of the verdict and sentence in not prescribing the term of his confinement.

Before his trial, the petitioner was already in the custody of the State. He was known by the penitentiary authorities to be insane at times, and when he appeared to be normal he did not have "very much sense". He was removed from the psychopathic ward for trial. Whether the facts

tending to show his mental incapacity to defend himself were reported by the officials of the state penitentiary is not clear. Joe Byrd testified that, "I might have and it seems like I did" tell the officers from San Jacinto County that petitioner was being released to them from the psychopathic ward. The facts were in possession of the state penitentiary officials, they may have been related to the San Jacinto County officials, and they should have been made known to the trial judge and to the State's attorney. Under such circumstances to require the petitioner without counsel to make the grave choice between a five year sentence and the risk of life imprisonment, and then upon his plea of not guilty to require him to be tried without counsel seems to me so apt to result in injustice as to be fundamentally unfair and a denial of due process of law.[2]

That conclusion is required, I think, from a consideration of the facts and circumstances of the case as revealed by the present record alone. Admittedly, the petitioner was tried and sentenced to life imprisonment without benefit of counsel and counsel was not offered to him. Admittedly, also, his doubtful mental condition was known to the State penitentiary officials; they took him from the prison psychopathic ward and delivered him for trial. The petitioner has made out at least a *prima facie* case that he was suffering from such mental incapacity as to make his trial without counsel unfair and hence his resulting life imprisonment a deprivation of his liberty

contrary to the Fourteenth Amendment. It seems to me that, if the respondent has additional evidence, he should produce the same on a hearing before the district judge pursuant to issuance of the writ or of an order to show cause.

I respectfully dissent.

Rehearing denied; RIVES, Circuit Judge, dissenting.

2. Appellant is not now represented by counsel, and I have been unable to find any case directly in point. The following decisions illustrate the care with which federal courts should investigate a claim that a person has been convicted while insane and without counsel: Ashley v. Pescor, 8 Cir., 147 F.2d 318; Kuczynski v. United States, 7 Cir., 149 F. 2d 478; Brewer v. Hunter, 10 Cir., 163 F.2d 341; Moss v. Hunter, 10 Cir., 167 F.2d 683; cf. Phyle v. Duffy, 334 U.S. 431, 68 S.Ct. 1131, 92 L.Ed. 1494; Smith v. Baldi, 344 U.S. 561, 73 S.Ct. 391. Among other decisions see Jablonski v. People, 330 Ill.App. 422, 71 N.E.2d 361; Evans v. United States, Mun.Ct.App.D.C., 83 A.2d 876. In Vonderschmidt v. State,

226 Ind. 439, 81 N.E.2d 782, the Fifth headnote accurately states the holding of the Supreme Court of Indiana:

"5. * * * Judgment of conviction of robbery by violence based on a plea of guilty entered without advice of counsel at a time when defendant was confused as a result of prolonged intoxication should be set aside on writ of error coram nobis and defendant permitted to withdraw plea and enter plea of not guilty, since acceptance of plea of guilty under the circumstances amounted to a denial of defendant's constitutional rights, though defendant, before entering plea, was advised of his constitutional rights and waived right to assistance of counsel. * * *"